## STATE OF CONNECTICUT, EX REL. JEDIDIAH WILCOX, *vs.* SAMUEL J. CURTIS.

An information in the nature of a quo warranto will not lie in a state court to try the right to the office of director in a bank organized under the national currency act.

The amended currency act of 1864, sec. 57, which provides that suits against the national banks may be instituted in both the federal and state courts, does not confer jurisdiction in such a case.

INFORMATION in the nature of a quo warranto, filed in the Superior Court for the county of New Haven. The information was as follows:

· Be it remembered that Eleazer K. Foster, Esq., Attorney for the State of Connecticut, within and for the county of New Haven, who in this behalf prosecutes in his own proper person, comes here before the Superior Court now in session at New Haven, within and for the county of New Haven, for

the State of Connecticut, at its term commencing the 3d Tues‑
day of December, A. D. 1867, and for the State of Connecti‑
cut, at the relation of Jedidiah ‧Wilcox of Meriden, in said
New Haven County, gives the court to understand and be
informed, that on the 14th day of January, A. D. 1868, the
First National Bank of West Meriden, was a corporation organ‑
ized under and in pursuance of the act of the. Congress of the‑
United States, entitled " An act to provide a national curren
cy, secured by a pledge of United States bonds, and to provide
for the circulation and the redemption thereof, " and located
and doing business at the town of Meriden, and long before
had been and ever since has been such corporation ; and that
the said Jedidiah Wilcox was at the date aforesaid and long
prior thereto, and ever since, a stockholder in said corpora‑
tion, and owned more than ten shares of the capital stock of
said corporation in his own right, standing in his name on the
books of said corporation, and not hypothecated or in any
way pledged as security for any loan or debt, and was and is
a citizen of the United States, and a resident of the state of
Connecticut, and that on said 14th day of January, 1868, he
was and long had been a director of said corporation, and
then exercised and discharged, and had long exercised and
discharged, the rights and duties of a director of said corpora‑
tion ; that on said 14th day of January, A. D. 1868, a meet‑
ing of the stockholders of said corporation was duly held at
the banking house of said corporation in said town of Meri‑
den, for the purpose of electing ten directors of said corpora‑
tion, for the year ensuing, in accordance with the provisions
of said act, and of the by-laws ‧of said corporation ; that at
said meeting of the stockholders of said corporation, held as
aforesaid, at the time and place aforesaid, the said Jedidiah
Wilcox received a sufficient number of the votes of the stock‑
holders given and cast at said stockholders meeting, to elect
him a director of said corporation for the year then ensuing,
and was then and there in the manner aforesaid duly and
legally elected a director of said corporation for the year then
ensuing, and did accept said appointment, and claimed to be

admitted as a director of said corporation, and ever since has and does still claim to be admitted a director of said corporation, and to use and to exercise the rights, powers and duties of a director as aforesaid; but that, notwithstanding his said election and acceptance as aforesaid, Lemuel J. Curtis, of said Meriden, on said 14th day of January, A. D. 1868, and from thence continually hitherto, without any legal warrant, choice or right, has used and exercised, and still does use and exercise the office of director in said corporation, for the year ensuing the 14th day of January, 1868, in place of the said Jedidiah Wilcox, and claims to be a director in place of said Jedidiah Wilcox, and to have and use and enjoy all the liberty, rights, privileges and franchises to said office appertaining, concerning which said office, liberties, rights, privileges and franchises, the said Lemuel J. Curtis, for all the time aforesaid, has usurped and still does usurp, to wit, at Meriden aforesaid, to the damage and prejudice of the rights of said corporation, and the said relator, and also against the peace of the state. Whereupon the said Attorney prays the consideration of this court in the premises, and that due process of law may be awarded against him, the said Lemuel.J. Curtis, in this behalf, to answer to this court, by what warrant he claims to have, use and enjoy the office, liberties, rights, privileges, and franchises aforesaid.

The respondent having been cited in, appeared, and filed a demurrer to the information, and the case was reserved, upon the demurrer, for the advice of this court.

*J. S. Beach,* with whom was *Fay,* in support of the demurrer.

1. It inheres in the nature and origin of a corporation that supervision and control of its corporate functions and franchise belong exclusively to the government which created it. *Bank of Augusta* v. *Earle,* 13 Peters, 588; *Runyan* v. *Costar's Lessee,* 14 id., 129; *Middlebrook* v. *Springfield Fire Ins. Co.,* 14 Conn., 307; *Miller* v. *Ewer,* 27 Maine, 509, 518.

2. The judicial powers of the state are co-extensive with the sovereignty of the state; this is the extent and limit of their jurisdiction. The agents of a foreign corporation, coming within the territory of this state to transact its business, become amenable to our laws. They must contract—if they make valid contracts for their principal—in conformity with those laws. Such contracts will by comity be recognized and enforced by the tribunals of this state. But over the domestic relations of the foreign corporation itself, the state has no jurisdiction. The mode in which it shall discharge its corporate functions, elect its officers, transfer its stock, &c., are matters over which this state has no sovereignty, and therefore the courts of the state have no jurisdiction.

3. The domestic relations of this corporation, though its locality is within the limits of this state, are as completely beyond its sovereignty, and therefore beyond the jurisdiction of the state tribunals, as if it was a foreign corporation created by, and located in, another state. The lawful enactments of Congress are the supreme law of the land. It follows that over institutions created for the purposes for which this corporation was organized, the state in which they happen to be located has no sovereignty. *M' Culloch* v. *State of Maryland*, 4 Wheaton, 429; *Bank of Commerce* v. *New York City*, 2 Black, 632; Ang. & Ames on Corp. § 736.

4. As the defendant did not derive and does not hold "the office, liberties, rights, privileges and franchise" of which the suit seeks to deprive him under the authority of any department of the state of Connecticut, its judicial department has no power to take them away from him and confer them on another. *Mc Clung* v. *Silliman*, 6 Wheaton, 598; *Territory of Nebraska* v. *Lockwood*, 3 Wallace, 236.

*Doolittle*, with whom was *O. H. Platt*, contra.

1. The question involved in this case is, whether the respondent usurps and exercises the functions of an office, in a pecuniary corporation in this state, to which the relator is entitled. The respondent says that the courts of this state

ve no power to determine that question, because the corporation was created by some other power than the state of Connecticut. It is of little consequence by what means the corporation obtained its corporate existence so long as the corporation is located and its officers discharge their duties and perform their functions in this state. Neither by the United States constitution nor the judiciary act of 1789, have the state courts been deprived of their jurisdiction over any question arising under this act. 1 Kent Com., 396, *et seq.*; Federalist, 82d number; *Jett* v. *Commonwealth of Virginia*, 7 Am. Law Register, N. S. (March 1868) 260.

2. The act authorizing the formation of this corporation does not provide that the United States courts shall have exclusive cognizance of this question. By the amended act of 1864, §57, concurrent jurisdiction is conferred upon the state courts, with the simple provision that no injunction shall issue from the state court against the comptroller of the currency.

BUTLER J. The power to create a corporation is an attribute of sovereignty; and the government of the United States created the corporation in question, in the exercise of that independent and supreme sovereign power which the people delegated to it by the constitution. It is therefore the creature of that sovereignty, and amenable to, and controllable by it, and by none other.

An information in the nature of a Quo Warranto against a corporation lies only at the instance and in the name of the sovereign power which created it. (5 Wheaton, 291.) The original writ so lay against any person who usurped any franchise or liberty against the King, or for misuser or non-user of franchises or privileges granted by him. The information in the nature of a Quo Warranto, authorized by the statute of the 9th of Anne, at the relation of any person against any other person usurping, intruding into, or unlawfully holding any franchise or office in any corporation, is but an extension and simplification of the ancient writ, and is grantable only where that would lie. In England it lies in the name of the

sovereign against those who usurp such franchises, because such usurpation is in derogation of the rights of the crown. In this country it lies in the name of the government, against those who usurp such franchises, because grantable or granted by the commonwealth.

"The state or commonwealth," says Mr. Angell in his work on corporations, "stands in the place of the king and has succeeded to all the prerogatives and franchises proper to a republican government. With us therefore to assume a power which cannot be exercised without a grant from the sovereign authority, or to intrude into the office of a private corporation, contrary to the provisions of the statute which creates it, is, in a large sense, to invade the sovereign prerogative and to assume or violate a sovereign franchise." And the cases cited fully sustain his positions. Upon the same principles the information can lie only in the name of the United States, and in the federal courts, against those who invade a franchise grantable or granted by the national government.

As then the corporation in question is the creature of federal sovereignty, and in respect to its internal organization, operation, and continual existence, is amenable to and controllable by that sovereignty alone ; and as the writ in question is properly grantable by that sovereignty alone whose franchise has been invaded and violated, it would seem upon principle too clear for argument, (if there be nothing more in the case,) that the relator has erred in invoking the interference of another uninvaded and unviolated sovereignty, and the court below have erred in assuming jurisdiction and granting the writ.

Such is the obvious *prima facie* character of the case before us. But the plaintiff insists that there is no error, and makes several claims, founded upon the conflex character of sovereignty as it exists in this country, divided between the national and state governments.

1. He insists in the first place that this institution is amenable to state sovereignty, because it is located and its officers

discharge their duties and perform their functions within this state. This claim is groundless.

It is indeed true, in the language of the Supreme Court of the United States, (2 Howard, 555,) that " a corporation created by a state, to perform its functions under the authority of that state, and only suable there, though it may have members out of the state, is a person, though an artificial one, inhabiting and belonging to. that state, and therefore entitled—for the purpose of sueing and being sued—to be deemed a citizen of the state. " But this is not such a corporation. It was not *created* by us; it does not perform its functions under *our authority* ; and it *is* the creature of and controllable by another and superior sovereignty. That other sovereignty is exercised over the whole country irrespective of state lines or state authority. It places its officers and agents and instruments wherever its necessities or its interests require, and necessarily within the limits of the states. With those officers, and agents, and instruments, in the exercise of their functions, state authority can in no way interfere. The national banks are its *instruments*, by which it performs its functions in establishing a national currency ; *on that fact their constitutionality is placed*, and in the exercise of the powers conferred upon them they are as independent of state control as the army, or navy, or the officers of the sub-treasury and custom-house, or any other *instrumentality* by which the functions of the federal government are performed. No other view is compatible with the principles of our own jurisprudence, or those recognized and declared by the Supreme Court of the United States in numerous cases, and particularly in the exhaustive opinion of Chief Justice Marshall in *M' Culloch* v. *Maryland*, 4 Wheaton, 316.

1. The relator insists in the second place, that the superior court has jurisdiction of the offense set forth in the information, because the judicial power of the federal and state governments is exercised concurrently by the courts of either, unless congress has conferred exclusive jurisdiction, in respect to the subject-matter, on the federal courts, and no such ex-

clusive jurisdiction has been conferred in relation to this. This claim is equally unfounded.

. It is undoubtedly true that the state courts retain jurisdiction over some matters, to which, by the constitution and laws of the United States, jurisdiction is given to the federal government and courts, and in respect to which jurisdiction appertained to and was exercised by the state courts prior to the adoption of that constitution. On that subject the rule seems to be, that the state courts retain the jurisdiction which they had before that event, except where it was taken away by an exclusive constitutional grant of jurisdiction to the federal government; or congress have made the jurisdiction exclusive in the federal courts; or the exercise of the jurisdiction is repugnant to, and incompatible with such exercise by those courts.

But the cases where such concurrent jurisdiction can be entertained by the courts of the states are few. Most of those where such jurisdiction has been sustained by the Supreme Court of the United States, and all to which we have been particularly referred, were cases of a criminal character, where the act was an offense against both sovereignties, and punished by a law of the state. Here there could be no jurisdiction anterior to the adoption of the constitution. Nor has there been any invasion of the sovereignty of this state or violation of its laws, or any *offense* which the state is called upon to redress in its own behalf. It is a clear principle that where there has been no offense there can be no judicial jurisdiction; and equally clear that a state has no authority to enforce a national law in behalf of the national government.

And this is one of that class of cases where jurisdiction in the state court is utterly incompatible with the necessary jurisdiction of the national government. The corporation in question being the creature and instrument of that government must necessarily be subject to that alone. By the common law, and by our statute, an information of this character lies as well to deprive a corporation of its charter as to determine the rights of its competing officers; and if the relator is right in this claim, its charter can be taken away and

its franchises seized by the courts of the state. Nothing could be more repugnant in character than such an unauthorized interference, for such a purpose, or for any purpose.

3.   The plaintiff claims in the third place, that concurrent jurisdiction of the subject-matter is conferred upon the state courts by the amended currency act of 1864, sec. 57, which provides, " that suits, actions and proceedings against any association, under this act, may be had in any circuit, district, or territorial court of the United States, held within the district in which such association may be established ; or in any state, county or municipal court in the county or city in which said association is located, having jurisdiction in similar cases.   Provided, however, that all proceedings to enjoin the comptroller under this  act, shall be had in a circuit, district, or territorial court of the United  States held in the district in which the association is located."    To this claim also we find it impossible to assent.

The information in the nature of a Quo Warranto, although grantable to determine a private right to  an office in a corporation, between party and party, as well as  to determine the right of the corporation  to the franchise assumed, and a civil proceeding, must be filed and issued in the name of the sovereignty which created the corporation, and is still so far forth a prerogative writ.    Congress, in the exercise of its authority to apportion the judicial power among the inferior federal courts, has been very cautious in conferring the power to grant prerogative writs.    That power is nowhere conferred, in express terms, upon  the circuit or any other federal court located in the states.    They did attempt to confer the power to grant a mandamus upon the Supreme Court, as a matter of original jurisdiction, but that court in *Marbury* v. *Madison* held the act unconstitutional, on the ground that it was not competent for Congress to increase the original jurisdiction of the Supreme Court.    By the 11th section of the judiciary act of 1789, jurisdiction was given to the circuit courts of all suits of a civil nature at common law and in equity to the amount of $500 or more between certain parties.    This writ, though in its nature grantable at the discretion of the court, is one of right,

and constitutes a suit within the meaning of that term as used in the act, but it is not of the character, or between the parties, contemplated by it.

The 14th section also authorizes the circuit and other federal courts " to issue writs of habeas corpus and all other writs not specially provided for by statute, which may be *necessary for the exercise of their respective jurisdictions,* and agreeable to the principles and usages of law." But the Supreme Court in *McIntire* v. *Wood,* (7 Cranch, 504,) and *M'Lung* v. *Silliman,* (6 Wheaton, 598) and *Kendall* v. *The United States,* (12 Peters, 524,) held that the circuit courts, within the states, had not power under those sections' to grant a *mandamus,* which is one of those writs, unless necessary for the exercise of their jurisdiction within the limits prescribed, although the power was sustained in the latter case, as having been given to the circuit court of the District of Columbia. The granting of those writs undoubtedly appertains to the judicial power of the government, but that part of the power seems not to have been conferred by Congress upon any of the courts but that of the District of Columbia, in prescribing their jurisdiction, except as incident to and *necessary for* the exercise of the other special powers with which they are clothed. The circuit court of the United States for this district has not the power, therefore, to issue a Quo Warranto in a case like this, by virtue of any general jurisdiction. And is it to be assumed that Congress, having been thus cautious of entrusting the federal courts with that power, intended nevertheless to confer it by the language quoted, and not only on the federal, but upon the state courts?—to delegate to the state courts a part of their sovereignty ? to submit a corporation—a creature of their creation, and an instrument by which they perform one of their functions—to the absolute and unrestrained supervision and control of the courts of another sovereignty, especially when by the act which created it they reserved to their own officers unusual supervisory power and control ? I think not. And if the case turned upon that question alone, I should be strongly inclined to the opinion that Congress intended by the clause quoted to pro-

vide a more *convenient forum* for determining the *ordinary* questions which must naturally arise between the corporations and others in the course of their business, and intended no more.

But there is another and conclusive objection to this claim of the plaintiff. The section in question authorizes suits *against the corporation only.* This is not a suit against the corporation, but a proceeding by one individual against another *individual* competing for the office of director of it; and it is not within the letter or spirit of the act.

For these reasons we advise that the information is insufficient and the demurrer should be sustained.

In this opinion the other judges concurred.