STATE *vs.* GRAND TRUNK RAILWAY COMPANY OF CANADA.

*Evidence. Practice. Common carrier. Passenger.*

In the trial of a railroad corporation on an indictment under R. S. of 1857, c. 51 § 42, the same rules of evidence and the same principles of law should be applied as in analogous civil actions for damages.

When a passenger enters a railway train, and pays the regular fare to be transported from one particular station to another, his contract does not obligate the corporation to furnish him with safe egress and ingress at any intermediate station.

And when such train turns out upon a side-track, at an intermediate station, and there stops to await the crossing of another train out of time, and the passenger, not destined to that station, without objection made or notice given, leaves the car, he thereby does no illegal act, but for the time surrenders his place as a passenger, and takes upon himself the direction and responsibility of his own motions during his absence.

State *v.* Grand Trunk Railway.

When such passenger thus leaves the car, and is on the platform, or near the track when his train is about to start, or the coming train has signalled its approach, the corporation, through its officer or servant, should give reasonable and seasonable notice for such passenger to return to the car, by using proper diligence, caution, and care; and if there be an established signal by the blowing of the whistle for passengers to resume their places in the cars, that should also be given.

But if the passenger go out of sight, and out of the reach of the voice which gives the usual loud and distinct notice for all passengers to repair on board, the corporation is not required to go after him.

ON EXCEPTIONS to the rulings of *Goddard*, J., of the superior court for the county of Cumberland.

INDICTMENT founded on R. S., c. 51, § 36, alleging, substantially, that the defendants, at Yarmouth, on Aug. 2, 1869, negligently and carelessly run their locomotive against one David P. Pullen, then and there in the exercise of due care and diligence, by means whereof he was killed.

It appeared that the deceased purchased a ticket at Auburn, for Portland; that the train turned out on the side-track at Yarmouth station, to await the express train from Portland, which was then late ; that he left the car, crossed the main-track, and went behind the water-tank to urinate ; that the express train signalled its approach when a mile away, whereupon the conductor of the waiting train gave the usual notice for passengers to resume their seats, which was repeated when the approaching train was one-third of a mile away ; that the down train gave the usual double-whistle signal and started about the time the express train arrived opposite the station ; that the deceased did not hear the order of the conductor, but did hear the double-whistle, and thereupon rushed out from behind the water-tank, and not seeing the express train, because of intervening water-tank, undertook to cross the main-track, when he was struck by the engine of the express train, and so injured that he survived about two hours.

The express train did not stop at the Yarmouth station. And in relation to its rate of speed while passing the station, there was much conflict of testimony ; some of the witnesses fixing it at six and others at twenty-five miles an hour.

After the judge had completed his charge, Mr. Bradbury, counsel for the defendants, said: "If your honor please, I ask your honor to instruct the jury that the contract between Pullen and the Grand Trunk Railway Company, being for transportation on their cars from Auburn to Portland, that they were not bound at any station, between these two points, to furnish ingress and egress to and from the cars for him.

*Court.* I give you that instruction, but I do not think it has anything to do with this case. The government is not proceeding in a civil suit for damages.

*Bradbury.* Do I understand your honor to give it unqualifiedly, or to explain it away?

*Court.* I give it unqualifiedly, but I also say that this party, having lost his life there, the question seems to me to be, was it by their negligence, while he was in the exercise of due care and diligence? This is not a suit for damages.

*Bradbury.* If your honor please, if the company is not bound to furnish safe ingress and egress at any intermediate point between the two points, then the passenger leaves the cars at his own risk.

*Court.* That may be true so far as a civil suit for damages is concerned, but I am not prepared to instruct the jury that it necessarily follows that the company can, therefore, escape liability in this prosecution, whereby the government seeks to obtain a conviction under the statute which imposes a fine for the benefit of his wife and children.

*Bradbury.* I understand your honor to give the instruction, and then to say that it has no bearing upon this case. I hold the position, if the contract between Pullen and the company was for his transportation between Auburn and Portland, that they are not bound to furnish ingress and egress to or from the cars, at any point between these two stations, that if he left the cars at any intermediate point, he left them at his own risk, and the company would not be responsible, under this indictment, for any accident that happened.

*Court.* I give you the instruction so far as a civil suit is con-

State *v.* Grand Trunk Railway.

cerned between the parties. In my judgment it has nothing to do with the case. I do instruct you, distinctly, that if you are satisfied that there was negligence or carelessness on the part of the railway, or any of its agents, while employed in its business, and due care and diligence on the part of Pullen, the fact that he had left the train for a necessary purpose, without caution or notice by the railway company not to do so, does not constitute a defense to this action.

Mr. Bradbury then asked that the requested instructions and rulings be read by the stenographer.

The judge then said that he would reduce his instructions on this point to writing, which he did, and then read them to the jury, as follows :

" If the jury are satisfied that the life of Pullen was lost at the time and place laid in the indictment, by the negligence or carelessness of the Grand Trunk Railway Company, or its servants or agents, while employed in its business, and that Pullen was in the exercise of due care and diligence, then they are authorized to find respondent company guilty, and that the fact that Pullen, who is conceded to have been a passenger, entitled to be carried on the noon passenger train of that day, by respondents, from Danville Junction to Portland, over their road, had left the car, for a necessary purpose, while that train was waiting at Yarmouth station, without any caution or notice from respondents, and without being forbidden or requested to forbear from so doing, or any public notice or rule or regulation of the company forbidding it, and was returning thither at the time of the accident, does not excuse respondents from liability in this prosecution."

The verdict was for the State, and the defendants alleged exceptions.

*Bradbury & Bradbury*, for the defendants.

*T. B. Reed,* attorney-general, for the State.

KENT, J.   Exceptions to ruling of the judge.

It is provided by § 42, c. 51, R. S., that "any railroad corporation, by whose negligence or carelessness, or by that of its servants or agents while employed in its business, the life of any person, in the exercise of due care and diligence, is lost, forfeits not less than five hundred nor more than five thousand dollars, to be recovered by indictment, found within one year, wholly to the use of his widow, if no children ; and to the children if no widow; if both, to her and them equally ; if neither, to his heirs."

The indictment charges facts which it is alleged, if true, bring the case within this provision of the statute.

This provision, for the payment of a sum of money for the loss of life, was undoubtedly made for the purpose of obviating the objection to such recovery, arising from the long-established doctrine of the common law, that no action for damages could be sustained for such loss of life.

It was declared in *Nickerson* v. *Harriman*, 28 Maine, 279, that " by the common law no value is ever put upon human life, to be recovered by way of damages in an action."   And the court in Massachusetts held to the same doctrine in *Carey* v. *Berk. R. R. Co.*, 1 Cush. 475.   The subject was discussed, with great ability, by Sprague, J., in *Cutting* v. *Seabury*, 1 Sprague's Decisions, 522, in which case the learned judge expresses doubts of the justice or wisdom of the rule, and whether it is fully " settled that no action can be maintained for the death of a human being," yet he does not decide the case upon that point, and leaves the question undetermined in his mind.

It was, no doubt, the belief that the common law afforded no remedy where life had been lost, even in the case where the injury, if it had been less than fatal, would have been good ground to sustain an action for damages, that led our legislature, at an early day, to provide a remedy for such cases.

In the law respecting highways, it has been provided, ever since the statute of 1821, that if any person suffers injury to his person or property, by reason of any defect in a highway, he may recover

his damages of the town liable to keep it in a safe condition. And in the same section it is provided, that, if the life of any person is lost through any such deficiency, the town bound to keep it in repair, having notice, shall forfeit not exceeding one thousand dollars, to be paid to the executor or administrator of the deceased for the use of his heirs, to be recovered by indictment.

The same mode of procedure, and for the same reason, has been provided in the statute now in question, and also made applicable to steamboats, stage-coaches, and common carriers. R. S., c. 52, § 7.

A question arises as to the rules and principles that are to govern in the trial of an indictment, found under these provisions. Are there any different rules to be enforced, because the claim is in this form, than are applied to the trial of civil suits, for like injuries ? If, for instance, an indictment is found against a town for the loss of life by reason of a defect in the highway, must not the trial proceed, and the verdict be rendered upon the proof of the same facts, as in a civil suit for a less injury ? The prosecution must prove a defective road,—the death caused solely by that defect, and reasonable care on the part of the deceased. On such proof, the verdict must be guilty, without any proof of a criminal intent or malice, or any of the distinguishing characteristics of a criminal prosecution, except the form of an indictment. But the State inflicts no punishment, as against a criminal offender, and no sentence of fine and imprisonment follows. The statute simply declares that the town " shall forfeit not exceeding one thousand dollars, to be paid to the executor or administrator of the deceased for the use of his heirs, to be recovered by indictment."

Nearly the same language is used in this section in relation to railroads, before quoted.

It is manifest that the whole object of these provisions, in regard to indictments, was to obviate the common-law doctrine in reference to human life, before stated, and to enable the heirs or family of the deceased to recover, for their own use, damages, to a certain extent, for the loss of life. But it was not the intention of the

legislature to do more than to do away, to this extent, with the rule that all claim for damages must stop at the grave. If, in this case, the man had lost a leg, but not his life, he could and must have brought a civil action to recover his damages. For reasons above stated, the law makers have carried the right beyond the life that was lost, and have adopted this mode of enabling the widow or children to recover for the loss of the father and husband.

It was thought just and expedient to hold these corporations and carriers thus liable, when death results from their wrong or neglect.

In England the same result was obtained by allowing a civil action, to recover damages by the representatives or family of the person killed by accident. Stat. 9 and 10 Vict. c. 93.

It will be observed that this is not an indictment for manslaughter, for causing the death of a human being unlawfully. The counts in this indictment are but little more than those which a pleader would have inserted in a writ, if the injury had been severe but not fatal. It would be anomalous, to say the least, to apply different rules of law to the two cases.

We are satisfied that in all this class of cases, where the statute has attempted to supply the supposed defect of the common law, as before explained, the same rules of evidence, and the same principles of law should be applied, as in like cases, when redress is sought by a civil action for damages.

In the case at bar, the presiding judge took a different view of the law.

The counsel for the defendants requested a distinct instruction, to the effect, that the contract between the deceased and the defendant company, being for transportation on that train, from Auburn to Portland, the company was not bound, at any station between these two points, to furnish ingress and egress to and from the cars; that if he left the cars at any intermediate point, he left them at his own risk, and the company would not be responsible, under this indictment, for any accident that happened.

The court said, " I give you that instruction so far as a civil suit is concerned between the parties. In my judgment it has nothing to do with the case."

State *v.* Grand Trunk Railway.

The same counsel had before asked for an instruction covering only, but distinctly, the first part of the above request, viz., that, under the facts stated, the company were not bound to furnish ingress and egress at any intermediate station. The court on this request said, " I give you that instruction, but I do not think it has anything to do with this case. The government is not proceeding in a civil suit for damages."

The counsel then asked, " if the court intended to give it unqualifiedly, or to explain it away." The court replied, " I give it unqualifiedly, but I also say, that this party, having lost his life there, the question seems to me to be, was it by their negligence, while he was in the exercise of due care and diligence? This is not a suit for damages."

The persistent counsel then urged, that if his first proposition was correct, " then the passenger leaves the cars at his own risk." The court replied, " That may be true so far as a civil suit for damages is concerned, but I am not prepared to instruct the jury that it necessarily follows, that the company can, therefore, escape liability in this prosecution, whereby the government seeks to obtain conviction under the statute which imposes a fine for the benefit of his wife and children." The counsel then remarked, " I understand your honor to give the instruction, and then say that it has no bearing upon this case." He then more fully stated his proposition, as above set forth at the commencement of this recapitulation, and the judge made the reply there quoted. From this recapitulation, it is evident that the court declined to adopt the rule, which we have before stated, as in our view the correct one. The jury must have understood that the rules and principles, which would have governed in a civil case, were not applicable to the case before them. The court repeatedly admitted that the rule of law, contended for by the defendants, was correct and true, but decided that it could not apply to the case on trial, because that was by indictment. We think if it was correct, it should have been given. The counsel asked for a specific instruction on a single point. The defendants had a right to a distinct ruling on this point, and it should have been given or refused or modified.

It may admit of a doubt whether, in any view of the case, and under the most stringent rules of law applicable to criminal prosecution, the request was not one which should have been answered by the court, and proper instructions and explanations given on the point raised. It bore, more or less directly, upon the actual relations of the parties at the time of the accident. The essential point of the request was, what was the nature of the contract between the parties, and how far did that contract authorize the passenger to leave the cars, with intent to return, at an intermediate station, and how far did it require the company to provide means of ingress and egress for him at such stations, or to give notice to such absent passenger to return? Was such leaving entirely at the risk of the passenger? This might depend upon the ruling of the court as to the nature and extent of the contract between the parties.

It appears by the report, that after the above-stated colloquium between the judge and the counsel, the judge reduced his instructions on the point to writing. In those instructions, however, he does not answer the request, as to the nature of the contract, or explain to the jury the rights and liabilities of the parties under it. He does say that the single fact that he left the car for a necessary purpose, without any caution or notice, and without being forbidden or requested to forbear from so doing, or any public notice or rule or regulation of the company forbidding it, and was returning thither at the time of the accident, does not excuse respondents from liability in this prosecution.

It may be true to this extent, viz., that these facts would not be, alone, a perfect defense, but it failed in not more fully stating and defining the various points before alluded to. This instruction does not meet the request. It does not state a general rule, as to rights of a passenger, in respect to leaving the cars at an intermediate station, and the duty of the company to provide ingress and egress.

We think the judge should have instructed the jury, that the proposition of the defendant's counsel, in his first request, was correct, as the judge admitted it was, if applied in a civil suit. But we do not see that it follows that, therefore, the company could not

be liable under any state of circumstances, as asserted in the conclusion of the last request. When a train stops at one of its stations to discharge and receive passengers, belonging to that particular station, the company is bound to see that proper modes of egress and ingress are provided for such passengers. But the other passengers may leave the cars, unless notified not to do so, but it must, to a certain extent, be at their own risk, so far as the usual modes of egress or ingress are in question. And the same rule applies more strongly, when a train stops on a side-track, awaiting the passing of another train out of time. In such a case the duty and the safety of the passengers both concur in saying to those who are not destined for that station, that they should remain in the car. That is the place of safety. The uncertainty as to the time when the other train may pass, and as to its rate of speed, and the danger in standing on or near the track, or in passing across it, are all suggestive of risk, and of the necessity of great care and caution to avoid injury.

If, however, no objection being made, or notice given, a passenger, who properly ought not, does leave the car, when thus stopping, does no illegal act, but he, for the time, surrenders his place as a passenger, and takes upon himself the direction and responsibility of his own motions during his absence. He may return to his seat and resume his place and rights as a passenger on that train before it starts.

But whilst thus "his own man," he may be injured or killed, as other persons, not passengers, may be, "by the negligence or carelessness of the railroad or its agents," and the corporation may be liable for such negligence or carelessness.

A question may arise as to the duties of the servants or agents of the road, when such passengers have left the cars without objection, and are on the platform, or near the track, when the train is about to start, or the coming train has signalled its approach. We think it but reasonable, in such cases, to require that the proper officer or servant of the corporation should give reasonable notice in time for such passengers to return to the cars, which they left,

safely, by using due and proper diligence, caution, and care. But they are not bound or required to go after those who have gone away and out of sight and out of reach of the voice, which gives the usual loud and distinct notice for all to repair on board. If there be an established signal, by blowing the whistle, for passengers to take their places in the cars, that should also be sounded.

But if a passenger goes beyond this limit, and does not, in fact, hear the summons, it is his fault or misfortune. The road has done its duty in this particular. We do not mean to say that even in such a case, he may not be killed or injured by the negligence or carelessness of the corporation, within the meaning of the statute.

If it is proved that there were such acts of negligence and carelessness, the corporation may be liable, if those acts caused the death of the party named in the indictment, without any negligence or carelessness on his part, contributing to the injury.

The question must be determined upon the whole evidence, under the rules of law. The first point to be established is the negligence or carelessness of the corporation.

After a careful examination of the whole case and of the exceptions, we think there should be a new trial, for the reasons before stated.                          *Exceptions sustained.*

*New trial granted.*

APPLETON, C. J.; CUTTING, DICKERSON, and TAPLEY, JJ., concurred.