Merrimack, }
Jan. 6, 1914. }

KATE HILL, *Adm'x*, v. BOSTON & MAINE RAILROAD.

Evidence that a traveler alighted from a train upon arrival at his destination and was struck by a locomotive while leaving the station upon a platform provided by the railroad company warrants a finding that he was a passenger at the time of his injury.

Whether a statute of one state is a penal law which cannot be enforced in another jurisdiction is a question determinable by the court of the state where its enforcement is sought.

A statute of one state, which in some aspects may be called penal, is not such in the international sense, and for that reason unenforceable in another jurisdiction, when its controlling purpose is to provide a private remedy to a person injured by a wrongful act, and not to punish an offence against the public justice of the state where it was enacted.

The Massachusetts statute providing an action against railroad corporations for death by negligence (Acts 1907, c. 392, s. 1) is clearly remedial in its substantial purpose and enforceable in this jurisdiction; and a suit brought thereunder in the court of this state cannot be dismissed because the statute provides for an assessment of damages with reference to the degree of the defendant's culpability, nor on the ground that such an action is repugnant to the public policy of New Hampshire.

ACTION OF TORT, brought under a statute of Massachusetts (Acts 1907, c. 392, s. 1) for the negligent killing of the plaintiff's intestate while a passenger on the defendant's road. Trial by

jury and verdict for the plaintiff. Transferred from the April
term, 1913, of the superior court by *Plummer*, J., on the defendant's
exceptions to the denial of motions for a nonsuit and the direction
of a verdict in its favor.

*John M. Stark* and *Martin & Howe* (*Mr. Stark* orally), for the
plaintiff.

*Streeter, Demond, Woodworth & Sulloway* (*Mr. Demond* orally),
for the defendant.

WALKER, J. The negligence of the defendant seems to be con-
ceded; but it is contended that the deceased was not a passenger
at the time of his injury, within the meaning of the statute under
which this action was brought. This question is principally one
of fact for the jury; and if there was any substantial evidence in
the case from which that fact could be found, the verdict upon
that point was justified. In *McKimble* v. *Railroad*, 139 Mass.
542, it is held that a passenger on a railroad car continues to be
such while rightfully leaving the car and the station at which he
has stopped. The plaintiff's intestate, having arrived at the
station at Salem upon one of the defendant's trains, had left the
train and was proceeding to leave the station upon a platform
provided by the defendant for the accommodation of passengers.
This platform led to a street which was crossed by the defendant's
tracks. There was evidence that just as he was stepping from the
platform he was struck by the tender of an engine which was back-
ing and thereby received fatal injuries. Whether this evidence
was credible was for the jury to decide. The testimony of one
witness, at least, tended to prove that he did not have a safe exit
from the platform into the street; and so long as he was right-
fully using the platform he was entitled to a passenger's protection.
It was competent, therefore, for the jury to find that he had not
ceased to be a passenger and had not become a highway traveler.

As the jury were justified in finding that the deceased was a
passenger at the time he was killed, the important question remains
for consideration, whether the courts of this state have jurisdiction
of the cause of action and can enforce the plaintiff's rights, or the
rights of the deceased's relatives secured to them by the statutes
of Massachusetts. The statutory provisions referred to are con-
tained in chapter 392, Acts 1907, and are as follows: "If a corpora-

tion which operates a railroad or a street railway, by reason of its negligence or by reason of the unfitness or negligence of its agents or servants while engaged in its business, causes the death of a passenger, or of a person who is in the exercise of due care and who is not a passenger or in the employ of such corporation, it shall be punished by a fine of not less than five hundred nor more than ten thousand dollars which shall be recovered by an indictment prosecuted within one year after the time of the injury which caused the death, and shall be paid to the executor or administrator, one half thereof to the use of the widow and one half to the use of the children of the deceased; or, if there are no children, the whole to the use of the widow; or, if there is no widow, the whole to the use of the next of kin; but a corporation which operates a railroad shall not be so liable for the death of a person while walking or being upon its railroad contrary to law or to the reasonable rules and regulations of the corporation. Such corporation shall also be liable in damages in the sum of not less than five hundred nor more than ten thousand dollars, which shall be assessed with reference to the degree of culpability of the corporation or of its servants or agents, and shall be recovered in an action of tort, begun within one year after the injury which caused the death, by the executor or administrator of the deceased for the use of the persons hereinbefore specified in the case of an indictment. . . . But no executor or administrator shall, for the same cause, avail himself of more than one of the remedies given by the provisions of this section."

It is contended in behalf of the defendant that the courts of one state do not enforce the penal statutes of another state, that the statute above quoted is a penal statute, that it has been held in that state to have that character, and that this court is bound by that construction and cannot examine the statute with a view of determining whether it is so far criminal that it is not enforceable in this state. One defect in this reasoning is the assumption that the decisions in Massachusetts in which it has been said that the statute is penal in character bind the courts of other states upon the question whether it is enforceable in other jurisdictions. For obvious reasons the courts of one state cannot enforce the criminal law of another; and it is doubtless true that where the controlling purpose of a statute is to impose a punishment for a violation of its provisions, its execution would not be attempted in a foreign jurisdiction. But it is the court that is appealed to that must

determine whether the foreign statute whose enforcement is sought is of such a character, in view of its evident purpose, that it does in effect require the imposition of punishment for a crime against the laws of another state, or whether it only authorizes the vindication of private statutory rights of a transitory nature. Because for some purposes it is decided that a local statute is penal in its character, it does not follow that a court in another jurisdiction must deem it penal for another and different purpose, that is, for the purpose of taking jurisdiction. The question presented in the latter case could not arise in the state where the statute was enacted, for the question is: Is the statute penal in an international sense? Can it be conveniently enforced in a civil action for the vindication of the plaintiff's statutory rights?

"The test is not by what name the statute is called by the legislature or the courts of the state in which it was passed, but whether it appears to the tribunal which is called upon to enforce it to be, in its essential character and effect, a punishment of an offence against the public, or a grant of a civil right to a private person. In this country, the question of international law must be determined in the first instance by the court, state or national, in which the suit is brought. If the suit is brought in a circuit court of the United States, it is one of those questions of general jurisprudence which that court must decide for itself, uncontrolled by local decisions." *Huntington* v. *Attrill*, 146 U. S. 657, 683. The same principle was well expressed in the same case when it was before the privy council ([1893] A. C. 150, 155): "Judicial decisions in the state where the cause of action arose are not precedents which must be followed, although the reasoning upon which they are founded must always receive careful consideration, and may be conclusive. The court appealed to must determine for itself . . . whether its enforcement would, either directly or indirectly, involve the execution of the penal law of another state."

But the Massachusetts decisions, while referring to the statute as a penal one, do not use that word without qualification. The remedy under the statute is sometimes referred to as "in the nature of a penalty" (*Oulighan* v. *Butler*, 189 Mass. 287, 295), as "penal in its character" (*Littlejohn* v. *Railroad*, 148 Mass. 478, 482), and its remedial character is recognized in *Hudson* v. *Railroad*, 185 Mass. 510. In fact, it is difficult to read the statute without being impressed with the idea that one controlling purpose of the legislature, as evidenced by the language used, was to remedy the sup-

posed defect in the common law and to enable the family of a pas-
senger or employee to recover compensation for his death caused
by the defendant's negligence.    And this purpose is explicitly
recognized in *Commonwealth* v. *Railroad,* 121 Mass. 36, which was
an action under the statute which at that time could only be brought
by indictment.    The court say (*p.* 37): "Both sections contemplate
proceedings as for a criminal offence, by indictment; but a leading
object of them is to secure some pecuniary provision for those who
may be dependent upon the deceased, and while penal in form,
they are therefore largely remedial in character."    Although the
remedy by indictment could not be resorted to in a foreign juris-
diction, this language is a strong intimation of the remedial charac-
ter of the proceedings when, under the present statute, they take
the form of a civil transitory action in tort.    The decision in this
case was that the indictment could not be sustained because in
the statute upon which it was founded it was provided that the
amount recovered should be for the use of the widow and children,
and as the deceased left no widow and children, the action must
fail.    This is almost a practical demonstration that the statute
was not intended to have the effect of a penal or criminal provision
for the punishment of manslaughter committed by railroad cor-
porations; for the public is as much in jeopardy and requires
the protection of the criminal law as much in such cases, whether
the deceased left or did not leave a widow and children.    Such an
unusual limitation on the administration of the criminal law is
not to be implied.    The only reasonable view is that the statute
was intended to be remedial in its substantial character and only
incidentally penal.

But whatever the holding of the Massachusetts court might be
upon the precise point presented here, which could not well arise
there with reference to their statute, it is evident that the case
cannot be decided upon the ground of mere nomenclature.    To
say that the statute is "penal in character" does not mean that
it is penal in the sense of not being enforceable in another state.
As is accurately stated in *Huntington* v. *Attrill, supra* (*p.* 673):
"The question whether a statute of one state, which in some aspects
may be called penal, is a penal law in the international sense, so
that it cannot be enforced in the courts of another state, depends
upon the question whether its purpose is to punish an offence
against the public justice of the state, or to afford a private remedy
to a person injured by the wrongful act."

In *Huntington* v. *Attrill*, [1893] A. C. 150, quoted from with approval by Mr. Justice *Gray* in the case last referred to, it is said in the opinion of the privy council (*p.* 157): "A proceeding, in order to come within the scope of the rule, must be in the nature of a suit in favor of the state whose law has been infringed. All the provisions of municipal statutes for the regulation of trade and trading companies are presumably enacted in the interest and for the benefit of the community at large; and persons who violate those provisions are, in a certain sense, offenders against the state law, as well as against individuals who may be injured by their misconduct. But foreign tribunals do not regard these violations of statute law as offences against the state, unless their vindication rests with the state itself, or with the community which it represents. Penalties may be attached to them, but that circumstance will not bring them within the rule, except in cases where these penalties are recoverable at the instance of the state, or of an official duly authorized to prosecute on its behalf, or of a member of the public in the character of a common informer. An action by the latter is regarded as an *actio popularis* pursued, not in his individual interest, but in the interest of the whole community."

In accordance with these views, the particular statute in question was held to be remedial and enforceable by the circuit court in *Boston & Maine R. R.* v. *Hurd*, 108 Fed. Rep. 116, where it is said (*p.* 121) that "it is quite apparent that the main purpose of the Massachusetts statute under discussion is compensation." See, also, *Malloy* v. *Company*, 148 Fed. Rep. 482; *Dennick* v. *Railroad*, 103 U. S. 11; *State* v. *Railway*, 58 Me. 176.

The case of *State* v. *Railroad*, 52 N. H. 528, supports this view. The statute (G. S., *c.* 264, *s.* 14) then in force provided: "If the life of any person not in their employment shall be lost by reason of the negligence or carelessness of the proprietors of any railroad, or by the unfitness or gross negligence or carelessness of their servants or agents, in this state, such proprietors shall be fined not exeeding five thousand dollars nor less than five hundred dollars, and one half such fine shall go to the widow, and the other half to the children of the deceased. If there is no child, the whole shall go to the widow; and if no widow, to his heirs according to the law regulating the distribution of intestate estates." In construing the statute the court say (*p.* 548): "The first question that arises is whether this indictment

is to be treated like a civil or a criminal proceeding. Is it intended to punish the corporation for committing a murder, as an individual would be punished for a crime, or is it only intended to make the company liable in damages to the family and heirs of the deceased for the injury done to them in depriving them of one upon whom they leaned for support and guidance? At common law, no value is ever put upon human life, to be recovered by way of damages in an action. . . . It was for the purpose of obviating this supposed defect in the common law, and removing the supposed objection to such recovery, that our statute was made, providing for the payment of a sum of money for the loss of life, to be recovered for the benefit of the widow, children, or heirs." The decision was that while the form of the proceeding was criminal, the action was in effect a civil suit, and that the same rules of evidence and principles of law are to be applied in such a case as are applied in other civil cases. The mere fact that incidentally the public are protected by the enforcement of a statute is of little importance in deciding whether it is a penal statute for the protection of the public, or a remedial statute conferring rights upon individuals. In fact, it may in one aspect be deemed penal and in another remedial. *Lewis* v. *Foster,* Smith N. H. 420; *State* v. *Railway,* 58 N. H. 198; *Quimby* v. *Woodbury,* 63 N. H. 370; *Robertson* v. *Kettell,* 64 N. H. 430.

The further argument is made, that because the statute authorizes an assessment of damages in cases like the one at bar beyond the sum of five hundred dollars "with reference to the degree of culpability of the corporation or of its servants or agents," its purpose was punishment, not compensation. It is said that this rule for the assessment of damages shows that the act is penal in the sense that it is not enforceable here. But according to the cases above referred to, that conclusion does not follow. The fact that damages are allowed in excess of the actual amount suffered by the family of the deceased does not indicate that the controlling purpose of the statute was to punish the offender for an offence committed against the public. That it was believed that this provision of the statute would promote greater carefulness in the running of trains and prevent many fatal accidents is doubtless true. But such an expectation, however probable, does not warrant the conclusion that the legislature intended to turn over the enforcement of the criminal law in this particular to the administrators of the victims of railroad accidents, for the pecuniary

benefit of certain individuals in their private capacity.  The legislature, in the exercise of its undoubted authority, merely established a rule for the assessment of damages to which it declared the relatives of the deceased were entitled in an action of tort instituted and prosecuted, not in behalf of the state, but by the representative of the deceased for the exclusive benefit of his family. Its principal object was to provide a remedy for the relatives of persons killed in consequence of the negligence of railroads and to provide for the recovery of substantial damages therefor.  The statute is based upon the almost universal understanding that serious loss to relatives results from the death of a member of a family, which is not capable of exact computation; and because of the difficulty of measuring the loss, it was provided that the damage should not be deemed in a given case to be less than five hundred dollars (*Brady* v. *Daly*, 175 U. S. 148) nor more than ten thousand dollars.  The defendant's culpability, whether great or small, in actions for personal injuries, is not an immaterial matter upon the question of the amount of the damages.  It is often regarded as a principal element when the defendant's wrongful act is of a nature to cause great mental suffering as well as physical injury.  *Friel* v. *Plumer*, 69 N. H. 498; *Prescott* v. *Robinson*, 74 N. H. 460, 465.  In this state this has been put upon the ground of compensation to the plaintiff, as contradistinguished from punishment of the defendant.  *Fay* v. *Parker*, 53 N. H. 342.  In other jurisdictions such damages are allowed on the ground of "smart money."  But upon whatever theory they are allowed, they are of a remedial compensatory character and belong to the injured party as much as the damage awarded for the purely monetary losses.  In addition to the minimum sum prescribed by the statute, a further sum may be awarded in view of the circumstances attending the injury.  But that fact does not prove that the statute is a penal statute enacted for the enforcement of the criminal law.

A holding that this statute is penal in the international sense can only rest upon a very strict and narrow definition of the word. It is in some sense penal, like many other statutes which confer personal rights.  But it is cearly remedial in its substantial purpose.  The action is not brought by the state or by any one in its interest; the damages are not payable to it or held in any way for its benefit; it has no control over the prosecution of the suit by the exercise of the pardoning power or otherwise; it is as little interested in the action as it would be in an action of tort at common

law by an individual. *State* v. *McConnell*, 70 N. H. 158. The statute confers upon individuals a right to compensation, to be enforced in a civil action by a person not representing the state in any respect. It is therefore difficult to understand how it can be successfully claimed that the plaintiff's action is in the nature of a criminal proceeding.

In Dicey Conf. Laws 221, the principle of law on this subject is stated as follows: "A law, on the other hand, is not a penal law merely because it imposes an extraordinary liability on a wrong-doer, in favor of the person wronged, which is not limited to the damages suffered by him; and an action for enforcing such liability, by the recovery of the penalty due to the person wronged, is not a penal action: the essential characteristic, in short, of a penal action is that it should be an action on behalf of the government or the community, and not an action for remedying a wrong done to an individual."

If further argument were necessary in support of this conclusion, it might be useful to consider what the situation would be if the defendant were sued here on a judgment recovered by the plaintiff in Massachusetts under this statute. According to *Huntington* v. *Attrill, supra,* in the supreme court of the United States, which holds that in such a case the court of the former is bound under the constitution to give full faith and credit to the judgment sued on, unless the original liability was founded upon a statute imposing a punishment of an offence against the state where it was enacted instead of conferring a private civil right, it would seem that this court would be obliged to sustain the action on the judgment, even if it regarded the statute as essentially criminal in its character. *Wisconsin* v. *Insurance Co.,* 127 U. S. 265. See, also, dissenting opinion in *Christilly* v. *Warner,* (Conn.) 88 Atl. Rep. 711, 716.

From the nature of the subject, it is perhaps not surprising that the cases are not all harmonious; but the diversity of opinion is largely due to divergent views of the meaning or force of the word "penal" when applied to a particular statute. In *Adams* v. *Railroad,* 67 Vt. 76, the Massachusetts statute in question was held to be penal in its main purpose and its enforcement was refused on that ground, although the court admitted that it was to some extent remedial. If the test is to consider what its controlling or "main" purpose is, the cases above referred to furnish a conclusive argument that it was principally intended to confer a civil right and to afford a civil remedy, not to the public, but to indi-

-viduals. The construction given to the statute in that case is more technical than substantial and would not seem to be in entire accord with the earlier case of *Newman* v. *Waite*, 43 Vt. 587, which -is referred to in the opinion.

The same result was reached in *O'Reilly* v. *Railroad*, 16 R. I. 388, in regard to the same statute. Certain features of the statute are referred to, which, standing alone, might lead to the conclusion that it is penal; others having an opposite tendency are not apparently considered. The general or essential purpose of the statute, as contradistinguished from its incidental effect, is not discussed.

In *Christilly* v. *Warner*, *supra*, the opinion of the majority of the court is open to the same criticism. It does not consider the views expressed in *Huntington* v. *Attrill*, *supra*, as to the meaning of "penal" in an international sense. The logic of the dissenting opinion is much more satisfactory.

In *Raisor* v. *Railway*, 117 Ill. App. 488, approved in 215 Ill. 47, the court had under consideration a statute of the state of Missouri providing for the recovery of a fixed amount for the death of a relative caused by the negligence of a railroad, and it was held that the statute was penal because it provided a specified amount as a forfeiture for such death, although it had been held in *Philpott* v. *Railway*, 85 Mo. 164, that the statute was in part at least compensatory. In *Matheson* v. *Railroad*, 61 Kan. 667, the same result was reached in regard to the Missouri statute; and the statute of the same import of New Mexico was refused enforcement in *Dale* v. *Railroad*, 57 Kan. 601. It should be noted that these statutes differ materially from the Massachusetts statute in providing for the fixed sum of five thousand dollars as a forfeiture in all cases; the idea of compensation measured by any other rule seems to be excluded. Nor is the rule of the federal courts as announced in the Huntington case considered or referred to in these cases. If they can in any view be deemed authorities for the proposition that the Massachusetts statute is not remedial or enforceable by the courts of this state, they cannot be followed.

It is further argued that the public policy of this state does not sanction such a suit as this. But the case of *State* v. *Railroad*, *supra*, is positive evidence that a suit of this general character was not opposed to public policy up to 1879, when the statute under which that case was decided was repealed and an action of tort by the deceased's administrator or executor was authorized for the benefit of the relatives of the deceased. Laws 1879, c. 35.

And this is the statutory law at the present time.  P. S., c. 191, ss. 8–13.  The fact that our law in many respects is materially different from that of Massachusetts is not of itself sufficient to warrant the conclusion that the court in its discretion ought to dismiss an action upon the latter statute.  *Rice* v. *Hosiery Co.,* 56 N. H. 114.  To entertain this suit is not so repugnant to our judicial system or to the interests of our citizens as to be contrary to what is known as the public policy of the state.  *Morrisette* v. *Railway,* 76 Vt. 267; *Slater* v. *Railroad,* 194 U. S. 120; Tiff. Death by Wrongful Act, s. 197.

*Exceptions overruled.*

All concurred.