## THEODORE LAPINSKI
*vs.*
## JOSEPH COPACINO

Court of Common Pleas    Litchfield County    File No. 7830

MEMORANDUM FILED JUNE 16, 1943.

*J. J. Davis,* of Waterbury, for the Plaintiff.

*John J. Casale,* of Torrington, for the Defendant.

*Sidney S. Cassel,* of Waterbury, for the Office of Price Administration.

BORDON, J.   The Emergency Price Control Act of 1942 (56 Stat. 23; U. S. Code, tit. 50, Appendix, §901 et seq.) puts a ceiling on prices for certain commodities, and, within certain areas, on rents of dwellings and apartments.   Section 205e of the Act (U. S. Code, tit. 50, Appendix, §925[e]) gives an overcharged person the right to bring an action for triple the amount by which the consideration exceeded the applicable maximum price, or $50, whichever is the greater, plus attorney's fees and costs.   Under this section "Any suit or action....may be brought in any court of competent jurisdiction."

The plaintiff claims he was overcharged $3 a month for his apartment for seven months, and seeks to recover $50 a month for that period.   The defendant claims that, when he purchased the property in which the plaintiff resided, he understood that the plaintiff's rent was $15 a month, but that he was allowed $3 a month for certain managerial services, which were discontinued by him.   His evidence, however, falls far short of establishing this fact, or any justification for his claimed understanding.   In fact, the overwhelming evidence warrants the conclusion that the increase was accomplished wilfully and in open violation of the appropriate provisions of the Act in question.   It is, therefore, found that under section 205e the plaintiff is entitled to recover $350, plus costs and attorney's fees, provided this court has jurisdiction.

The more serious and important question for adjudication is whether this court may, or can, take jurisdiction over rights and remedies created by an act of Congress, especially when they involve the enforcement of punitive remedies which are, in fact, penalties for violation of a federal law.   Does the provision for bringing any suit or action under section 205e "in any court of competent jurisdiction" give state courts jurisdiction over cases arising thereunder?

This question is of timely importance because cases of this character are being brought to state courts in increasing numbers and the claim of lack of jurisdiction is frequently

asserted. The court has, therefore, given the question care-ful consideration.

The courts of this State early adopted, and adhered to, the theory that state courts have no jurisdiction of suits brought under laws of the United States, and that congres-sional action giving them such jurisdiction was unconstitu-tional. *Ely vs. Peck,* 7 Conn. 239; *Davison vs. Champlin,* id. 244.

In both of these cases recovery was denied on the ground that they arose under the laws of the United States, and that under section 1 of article 3 of the Constitution "the judicial Power of the United States, shall be vested in one Supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish", and that under section 2 of article 3 "the judicial Power shall extend to all cases, in Law and Equity, arising under the Constitution [and] the Laws of the United States."

The court held that "the judiciary of a state is a constituent part of another and an independent sovereignty, from which they receive their authority and support; whose laws they are bound to execute. But they are under no such obliga-tions to the United States, whose laws they are bound to obey as citizens, but not to execute as magistrates." *Ely vs. Peck, supra,* p. 243.

In those early days it was repeatedly held by both state and federal courts that state courts were not the "inferior courts" referred to in section 1 of article 3 of the Constitu-tion, and that only courts created by Congress were within that category. *United States vs. Lathrop,* 17 Johns (N.Y.) 4; *Martin vs. Hunter's Lessee,* 1 Wheat. 304, 337; *Scoville vs. Canfield,* 14 Johns (N.Y.) 338. In 4 Cranch 97, the court said through Marshall, C. J.: "The state courts are not, in any sense of the word, *inferior* courts, except in the particular cases in which an appeal lies from their judgment to this court. . . . They are not inferior courts be-cause they emanate from a different authority, and are the creatures of a distinct government." *(Ex parte Bollman,* 4 Cranch 75, 97.)

Since the *Ely* and *Davison* cases arose under a law of the United States our court declined to accept jurisdiction.

This legal principle is further adhered to in *State ex rel. Wilcox vs. Curtis*, 35 Conn. 374, in which the court held that an information in the nature of a quo warranto will not lie in a state court to try the right to the office of director in a bank organized under the National Currency Act.

Perhaps the most important Connecticut cases in which the question was raised and determined are *Hoxie vs. New York, N. H. & H. R.R. Co.*, 82 Conn. 352, and *Mondou vs. New York, N. H. & H. R.R. Co.*, id. 373.

The *Hoxie* case held that the Federal Employers' Liability Act of 1908, which removed recognized common-law defenses, then in force in Connecticut, in actions by an employee against an employer, and allowed certain punitive damages, could not be enforced in a state court even though Congress authorized the institution of the action in such court. The court said, in part, through Baldwin, C.J. (p. 235): "By its provisions the sovereignty of each of the States is as carefully guarded as that of the United States. Each was to remain free to maintain its own executive, legislative and judicial magistracies. Nothing could be done by Congress to impair this right, in any State, so long as it preserved a republican form of government. The power to maintain a judicial department is one, incident to the inherent sovereignty of each State, 'in respect to which the State is as independent of the general government as that government is independent of the States.' "

A demurrer to the complaint was sustained because:

"1. Congress did not intend by the Act of April 22d, 1908, to authorize the institution of an action under it in the courts of the States.

2. It had no power to make it incumbent on the State courts to assume jurisdiction of such an action.

3. The issues before the Superior Court involved the consideration of these points, which justified, of themselves, the dismissal of the plaintiff's action; but further,

4. The Act, so far as it concerns this cause, is wholly void by reason of certain of its provisions which cannot be separated from the rest."

Simultaneously with the decision in the *Hoxie* case came the

one in the *Mondou* case, which reaffirmed and followed it. The decision in the *Mondou* case was reversed by the Supreme Court of the United States, in 223 U. S. 1, 57, which held, in part, quoting *Clafin vs. Houseman,* 93 U.S. 130, 136, that: " 'The laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are. The United States is not a foreign sovereignty as regards the several States, but is a concurrent, and, within its jurisdiction, paramount sovereignty....If an act of Congress gives a penalty [meaning civil and remedial] to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a state court. The fact that a state court derives its existence and functions from the state laws is no reason why it should not afford relief; because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the State as it is to recognize the state laws. The two together form one system of jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent....It is true, the sovereignties are distinct, and neither can interfere with the proper jurisdiction of the other....But this is no reason why the state courts should not be open for the prosecution of rights growing out of the laws of the United States, to which their jurisdiction is competent, and not denied.' "

This decision waved aside the reasons motivating our court's decision in the *Hoxie* case, holding (p. 58) that: "The existence of the jurisdiction creates an implication of duty to exercise it, and that its exercise may be onerous does not militate against that implication. Besides, it is neither new or unusual in judicial rules of law to different situations and subjects, even though possessing some elements of similarity. ....But it never has been supposed that courts are at liberty to decline cognizance of cases of a particular class merely because the rules of law to be applied in their adjudication are unlike those applied in other cases."

If state courts are to accept, as binding, the decision of the Supreme Court of the United States, it must be concluded

that rights arising under an act of Congress may be enforced, as of right, in the courts of the states where the jurisdiction as prescribed by local laws is adequate to the occasion. Changing times and conditions, bringing a multitude of new problems, have vindicated this as the wiser rule, for without it, remedies afforded by congressional action would, frequently, be impossible of performance without changing the entire judicial system of the United States. Federal courts, as at present constituted, have jurisdiction only in specified cases and where the amount in demand is at least $3,000. If it is held that Congress cannot impose the adjudication of rights and remedies created by it on state courts, or that state courts may decline to take cognizance of such cases, there would be no tribunal in existence to adjudicate controversies arising under certain federal laws, especially where the amount involved is not within the jurisdiction of the federal courts, and can be better handled by a state court having the facilities and machinery for the expeditious disposition of such controversies.

Our Supreme Court was, apparently, hesitant in accepting, *in toto,* the broad principle enunciated in the *Mondou* case, as evidenced by its decision in *Cristilly vs. Warner,* 87 Conn. 461, where the question of giving full faith and credit to a statute of another state was involved. In this case the plaintiff sought recovery under a Massachusetts statute imposing a liability of not less than $500 nor more than $10,000 for causing death by negligence, and prescribing that the amount recoverable should be assessed with reference to the degree of culpability of the defendant. The court held (Beach, J., dissenting), that this was a penal statute and said, in part (p. 463): "It is a general principle of our law that the plaintiff has the right to enforce in our courts any legal right of action which he may have, whether it arise under our own law or that of another jurisdiction....There are certain recognized exceptions to this rule. We do not enforce foreign statutes which are penal, or rights arising thereunder."

This was regarded as the law of Connecticut until the same question arose in the case of *Daury vs. Ferraro,* 108 Conn. 386. In this action the plaintiff sought recovery under a Massachusetts statute, substantially like that passed on in the *Cristilly* case, claiming that while the statute was in some aspects punitive in its nature, it also had compensatory features and

a remedial function. In its decision the court distinguishes between a penal statute which is in part compensatory and one that is penal in the international sense, which in some aspects resembles an indictment or criminal penalty. The court specifically overrules *Cristilly vs. Warner*, holding that the statute in question was not penal in the international sense, and allowing recovery under the statute in Connecticut. *Huntington vs. Attrill*, 146 U.S. 657; dissenting opinion Beach, J., in *Cristilly vs. Warner*, 87 Conn. 461, 467; *Hill vs. Boston & Maine R.R. Co.*, 77 N.H. 151, 89 Atl. 482; *Loucks vs. Standard Oil Co.*, 224 N.Y. 99, 120 N.E. 198; *Wellman vs. Mead*, 93 Vt. 322, 107 Atl. 396.

Even before the *Daury* case, our Supreme Court in *United States vs. Stevens*, 103 Conn. 7, indicated a departure from its earlier decisions by enforcing a provision of the National Prohibition Act, which authorized a state prosecuting attorney to bring an action to enjoin a nuisance in "any court having jurisdiction to hear and determine equity cases." The court held (p. 15) that "under this Act prosecuting attorneys of any State may institute, in any proper court having equity jurisdiction, an action to enjoin any nuisance as defined by [the Act].".... "'It was the evident intention of Congress ....to make available the judicial machinery of the States for the institution of actions in equity for the abatement of nuisances.' State courts have concurrent jurisdiction with the Federal courts in abating nuisances as defined by [the Act]." *Claflin vs Houseman, supra; Mugler vs. Kansas*, 123 U.S. 623.

The *Stevens* and *Daury* cases are now the recognized law of Connecticut, and, in conjunction with the United States Supreme Court decision in the *Mondou* case, would seem authority for the principle that a state court, when given the jurisdiction by a congressional act, must take cognizance of cases committed to it thereunder even, if by its provisions, the remedies are in a sense penal. Hence the conclusion that, one claiming rights and remedies under the Price Control Act in question, may pursue the remedies afforded him by the Act in a state court.

To the $350 to which the plaintiff is entitled under section 205e, the court adds $75 as a reasonable attorney's fee, making a total of $425, for which amount, together with costs, judgment may be entered for the plaintiff.