W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

LOCAL UNIONS 410, 410A, 410B & 410C, INTERNATIONAL UNION OF OPERATING ENGINEERS, Defendant-Respondent.

W. Willard WIRTZ, Secretary of Labor. United States Department of Labor, Plaintiff-Appellant,

v.

LOCAL 30, INTERNATIONAL UNION OF OPERATING ENGINEERS, Defendant-Respondent.

Nos. 337, 338, Dockets 29998 and 30085.

United States Court of Appeals Second Circuit.

Argued May 11, 1966.

Decided Aug. 1, 1966.

Rehearing Denied Oct. 4, 1966.

See also D.C., 34 F.R.D. 13.

Arthur S. Olick, Asst. U. S. Atty., Southern Dist. of New York (Robert M. Morgenthau, U. S. Atty., Robert E. Kushner, and Lawrence W. Schilling, Asst. U. S. Attys., Southern Dist. of New York, and Justin J. Mahoney, U. S. Atty., Northern Dist. of New York, on the brief), for plaintiff-appellant.

Bernard T. King, Syracuse, N. Y. (Blitman, Carrigan & King and Nathan H. Blitman, Syracuse, N. Y., on the brief), for defendant-appellee Local Unions 410, 410A, 410B, and 410C, International Union of Operating Engineers.

William J. Corcoran, New York City, for defendant-respondent Local 30, International Union of Operating Engineers.

Before LUMBARD, Chief Judge, and WATERMAN and KAUFMAN, Circuit Judges.

LUMBARD, Chief Judge.

These are two separate suits brought by the Secretary of Labor against locals of the International Union of Operating Engineers (IUOE) to set aside 1962 union elections on the ground that provisions of the IUOE's constitution, as adopted and applied by the locals, violated § 401(e) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 481(e), by depriving union members of a "reasonable opportunity" to be candidates for union office. Both

district courts [1] held that the Secretary had failed to prove that any violations of the Act "may have affected the outcome" of the elections in question. 29 U.S.C. § 482(c) (2). Each local conducted an election in 1965 subsequent to the district court decision in its favor. As we hold that this fact has made both appeals moot, the two cases will be treated together in this opinion. Each case is remanded with instructions to the district court to vacate its dismissal on the merits and to dismiss the complaint as moot.

## I.

 Local 30 is a union of licensed Stationary Engineers (those in charge of boilers, engines, pumps and refrigeration equipment in industrial plants) located in New York City and affiliated with IUOE. Local 410, located in Binghamton, New York, is an IUOE affiliate composed of journeymen engineers who operate power cranes, shovels and similar heavy equipment.

Affiliated locals must adopt the provisions of IUOE's constitution pertaining to the eligibility of union members for union office. The constitutional qualifications which prospective candidates must possess include the following:

(a) "Continuous good standing" for one year, i. e., payment of union dues on or before the first day of each month of the entire year preceding the election.

(b) The filing of a "declaration of candidacy" on or before January 15th of the election year.

(c) The filing of a non-Communist affidavit.

(d) Attendance at a majority of the regular meetings held between his declaration of candidacy and the election date.[2]

After Local 30 and Local 410 held elections in 1962 in which incumbent officers and "close associates" were elected without opposition, union members who had been rejected as candidates because of their failure to comply with the above requirements lodged complaints with their respective locals and, when their IUOE remedies were exhausted unsuccessfully, protested to the Secretary that they had been illegally deprived of their right to stand for office. These complaints being timely, see 29 U.S.C. § 482 (a) (1), the Secretary investigated the challenged elections and brought these suits to have them set aside and conducted again under his supervision. 29 U.S.C. § 482(b).

The complaint against Local 410 charged that its "continuous good standing" rule was not a "reasonable qualification uniformly imposed," 29 U.S.C. § 481(e), and hence that members of the local had been deprived of their right to seek office. The complaint against Local 30 charged that its "declaration of candidacy" rule was likewise unreasonable and in addition that Local 30 had failed to give its members adequate notice of the 1962 election so that prospective candidates might comply with this rule. Judge Metzner agreed that the declaration of candidacy rule violated § 481(e) but held that the Secretary had failed to prove that enforcement of that rule may have affected the outcome of Local 30's election. Judge Port also dismissed the complaint against Local 410 on this ground; he assumed without deciding that the continuous good standing rule violated the Act.

Shortly after the decisions of the district courts, both locals held 1965 elections in accordance with the IUOE constitution and the LMRDA's requirement that elections be held at least triennially. 29 U.S.C. § 481(b). Thus, the present officers of each local are not holding office pursuant to the challenged 1962 elections. We conclude that, in

1. The *Local 30* case was decided by the United States District Court for the Southern District of New York, 242 F. Supp. 631 (1965). The *Local 410* case was decided by the United States District Court for the Northern District of New York, 61 L.R.R.M. 2396 (1965).

2. Article XXIII, Subdivision 1, Section (b). The filing date was changed to March 15 in 1964.

light of the statutory scheme in question, these subsequent elections render both cases moot.

■ "A federal court is without power to decide moot questions or to give advisory opinions which cannot affect the rights of the litigants in the case before it." St. Pierre v. United States, 319 U.S. 41, 42, 63 S.Ct. 910, 911, 87 L.Ed. 1199 (1943). Since the rights of litigants are affected by the judicial remedies available, in evaluating whether a particular appeal has become moot, attention must be focused on the particular relief sought by the appellant. See generally Diamond, Federal Jurisdiction to Decide Moot Cases, 94 U.Pa.L.Rev. 125 (1946).

■ The exclusive remedy which Congress has created for challenging a union election, see 29 U.S.C. § 483, is a suit by the Secretary to declare the election void and to direct the conduct of a new election. This suit may only be brought after a union member has made a proper complaint to the Secretary and after the Secretary has made a finding of probable cause to believe that a violation of § 481 has occurred. Congress intentionally created a narrow remedy under Title IV of the LMRDA so that interference with union elections and management would be kept at a minimum. See Calhoon v. Harvey, 379 U.S. 134, 140, 85 S.Ct. 292, 13 L.Ed.2d. 190 (1964).

■ In these two cases, the Secretary has no standing to attack the 1965 elections since no member of Local 30 or of Local 410 has filed a valid complaint challenging them. See Wirtz v. Local Union No. 125, etc., 231 F.Supp. 590 (N.D.Ohio 1964). It would serve no practical purpose with respect to these locals to declare their 1962 elections void because the terms of office thereby conferred have expired. And because Title IV does not permit the Secretary to seek either to enjoin future elections, or to declare a given candidacy requirement unlawful absent a valid complaint and an investigation of its application to a specific election, cf. Calhoon v. Harvey, supra, we conclude that we have no power to afford the Secretary relief and therefore that these cases are moot.

## II.

■ When an appeal becomes moot because of circumstances occurring after the decision of the district court, the appellate court may dismiss the appeal, or it may vacate the judgment of the district court with instructions that the complaint be dismissed as moot. See Cover v. Schwartz, 133 F.2d 541, 546 (2 Cir. 1942), cert. denied, 319 U.S. 748, 63 S.Ct. 1158, 87 L.Ed. 1703 (1943). Upon this decision may turn the future res judicata effects of the district court's judgment. See United States v. Munsingwear, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950). In order to determine the correct disposition and because the adverse nature of the decisions on the merits by the district courts may serve to deter similar suits, we proceed to consider the merits. That examination persuades us that the judgments below should be vacated.

In the Local 30 case, the evidence established that the candidacy of William Neville, a union member for 18 years and an unsuccessful candidate for office in 1958 and 1960, was rejected on the ground that he had not filed a timely declaration of candidacy. In the 1962 election that followed only the incumbent officers appeared on the ballot. Only 607 of the union's 3,000 members voted, roughly one-half the number that had voted in the contested elections of 1958 and 1960.

In the Local 410 case, eleven members who had filed timely declarations of candidacy were declared ineligible for office because they failed to meet the continuous good standing rule. One of these eleven was a proven vote-getter who had been elected conductor and trustee in 1958 but was not an incumbent in 1962. Only incumbents and their close associates qualified for nomination and election in 1962, and only 216 out of almost 600 union members voted in the uncontested election.

■ Nevertheless, both district courts held that the Secretary failed to prove that the exclusion of these members from the ballots "may have affected the outcome" of the election, § 482(c)(2), because there was no indication that persons other than those actually elected might have prevailed had the alleged violations of § 481(e) not occurred. We think that this is too restrictive a view of the burden Congress intended through § 482(c)(2) to place upon the Secretary in Title IV suits to upset union elections.

Early drafts of the LMRDA would have required proof that a violation of Title IV "affected the outcome of the election." The Senate altered this provision by adding the words "may have" with the express intent of reducing the Secretary's burden and thus of facilitating enforcement of Title IV.[3] We think this intent and the natural meaning of the proviso are served if the Secretary is required only to prove the existence of a reasonable probability that the election may have been "affected" by an alleged violation of § 481(e).

■ The proviso was intended to free unions from the disruptive effect of a voided election unless there is a meaningful relation between a violation of the Act and results of a particular election. For example, if the Secretary's investigation revealed that 20 percent of the votes in an election had been tampered with, but that all officers had won by an 8–1 margin, the proviso should prevent upsetting the election. Compare Wirtz v. Local 11, International Hod Carriers, etc., 211 F.Supp. 408 (W.D.Pa.1962). But in the cases at bar, the alleged violations caused the exclusion of willing candidates from the ballots. In such circumstances, there can be no tangible evidence available of the effect of this exclusion on the election; whether the outcome would have been different depends upon whether the suppressed candidates were potent vote-getters, whether more union members would have voted had candidates not been suppressed, and so forth. Since any proof relating to effect on outcome must necessarily be speculative, we do not think Congress meant to place as stringent a burden on the Secretary as the district courts imposed here.

■ In holding that § 482(c)(2) had not been satisfied, the district courts relied on a dictum in the concurring opinion of Mr. Justice Stewart in Calhoon v. Harvey, 379 U.S. at 146 n. 7, 85 S.Ct. 292, to the effect that relief may only be had in Title IV suits when the complaining insurgent faction "approaches majority status." This would surely be true in the ballot tampering example outlined above. But to apply this standard in exclusion of candidate cases would require reliance on relatively inconclusive factors such as the excluded candidate's performance in previous years. In these cases, there was evidence that the excluded candidates were politically active union members one of whom had stood for and even won office in earlier years. In addition, the elections here complained of were uncontested, and only a small minority of the union electorate actually voted. Under these circumstances, we think the § 482(c)(2) proviso was satisfied. In order not to leave in effect the lower courts' contrary conclusions, we vacate the judgments of the district courts with instructions that the complaints be dismissed.

### III.

■ In our opinion, it is unfortunate that these appeals are moot, for they reflect the need for appellate review in

---

3. See Senator Goldwater's remarks upon the change. "The Kennedy-Ervin bill * * * as introduced, authorized the court to declare an election void only if the violation of section 401 actually affected the outcome of the election rather than may have affected such outcome. The difficulty of proving such an actuality would be so great as to render the professed remedy practically worthless." Legislative History of the Labor Management Reporting & Disclosure Act of 1959, at 1851 (U. S. Government Printing Office, 1959). See also the House Conference Report on H.R. No. 1147 and S. 1555, id. at 939.

Title IV cases. The IUOE provisions in question and other IUOE candidacy requirements have been the subject of repeated attacks by the Secretary, and the district court decisions have been divided. See Wirtz v. Local Union 825, IUOE, Civ. No. 438–63 (D.N.J.1966) (violation assumed—probable effect on outcome not proved); Wirtz v. Local Union No. 406, IUOE, Civ. No. 14573 (E.D.La.1966) (violations found—no exhaustion of union remedies); Wirtz v. Local Union No. 9, IUOE, 51 CCH Lab.Cas. para 19,579 (D.C.Colo.1965) (violations found—new election ordered without considering whether effect on outcome proved). Moreover, the eligibility requirements of the IUOE are the most stringent of the 68 major national and international unions, which represent 90 percent of organized labor.[4] The effect of these requirements is revealed by the fact that only 35 of the 589 members of Local 410 were eligible to stand for office in 1962. Since local elections under these requirements recur every three years, it is important that the Secretary's challenges be finally determined on the merits by an appellate court.

Title IV itself does not raise significant barriers to appellate review. While the complaining union member must attempt to invoke internal union remedies, he need only wait three months after such invocation before filing his complaint with the Secretary. § 482(a) (2). And while the Secretary must investigate each complaint and make a finding of probable cause of a violation, he is required by § 482(b) to bring a suit challenging the election within 60 days of the filing of a complaint.

As these cases illustrate, it is the delays incident to civil cases in the district courts which create the substantial likelihood that subsequent union elections will moot Title IV cases prior to appellate review.[5] To prevent recurrence of such delays, we think the district courts should expedite the trial of Title IV cases to the greatest extent possible. In a district such as the Southern District of New York, it would seem appropriate for such a case to be assigned at an early stage to one judge for all purposes. See Rule 2, Rules of the Southern District Court. In addition, we suggest that in a compelling case, such as one where union elections are held annually, temporary relief may be appropriate to prevent an election from mooting a pending Title IV suit by the Secretary. Of course this court is always ready to expedite such matters, upon application, by ordering an early hearing of the appeal and shortening the time for docketing the record and filing briefs.

The judgments of the district courts are vacated and the cases remanded with instructions that the complaints be dismissed as moot.

On Petition for Rehearing

PER CURIAM:

The petition for rehearing is denied.

Our opinion in this case and in Writz v. Local Unions Nos. 545, 545-A, 545-B, and 545-C, International Union of Operating Engineers, decided September 13, 1966, 366 F.2d 435, point out the means available to the Secretary to prevent these cases from becoming moot and the means to expedite their disposition,

4. According to the Department of Labor only two other unions refuse members any grace period in which to pay their dues in order to be in "good standing" and in neither of them must a candidate maintain his good standing for so long as the 12 months required by the IUOE. The IUOE is the only union with the prenomination declaration of candidacy requirement.

5. In Local 410 the election was held June 4, 1962 and the complaint filed by the

Secretary November 26, 1962. The trial did not commence, however, until May 19, 1965. After the district court's decision the new elections were held on August 2, 1965.

In Local 30, the election was held June 12, 1962 and the complaint filed by the Secretary October 8, 1962. The trial began March 25, 1965. After the district court's order of dismissal June 17, 1965, the union held new elections on August 10, 1965.

as the Congress intended, so that the rights of individual union members may be suitably protected without unnecessary delay. Thus, if unavoidable or excusable delay prolongs the determination of a suit brought under 29 U.S.C. § 481 to set aside an election, and it appears that another election may be held and new officers installed, before the suit may be determined, the Secretary must make prompt and timely application to the district court to stay such election. This is what the Secretary did in Writz v. Local Unions Nos. 545, et al.

The district courts should give these matters prompt attention and preferential treatment. In addition, this court stands ready to do whatever may be necessary to expedite the consideration of any such matter which may be ripe for its attention.