W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Appellant,

v.

LOCAL UNIONS NO. 9, 9–A AND 9–B, INTERNATIONAL UNION OF OPERATING ENGINEERS, Appellee.

LOCAL UNIONS NO. 9, 9–A AND 9–B, INTERNATIONAL UNION OF OPERATING ENGINEERS, Cross-Appellant,

v.

W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Cross-Appellee.

Nos. 8226, 8227.

United States Court of Appeals Tenth Circuit.

Oct. 6, 1966.

John W. Douglas, Asst. Atty. Gen. (Lawrence M. Henry, U. S. Atty., Alan S. Rosenthal and Robert C. McDiarmid, Attys., Dept. of Justice., with him on brief), Denver, Colo., for appellant and cross appellee.

Wayne D. Williams, Denver, Colo. (Howard E. Erickson, Denver, Colo., with him on brief), for appellee and cross appellant.

Before LEWIS, BREITENSTEIN and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

The action was filed in the District of Colorado pursuant to the requirements of Section 402 of the Labor-Management Reporting and Disclosure Act.[1]

Taylor and other members of defendant Local Unions affiliated with the International Operating Engineers Union filed declarations of candidacy for various local union offices. The Constitution of International required that the declarations be filed prior to January 15th of the year of the election. Taylor and other members complied with this requirement in 1963. In February of that year, these members were notified that under the Constitution of International and Bylaws of the local unions they were not eligible to file.

The Constitution, and local Bylaws revised April, 1963, provide that nominees must be in continuous good standing for not less than one year. Good standing is defined in the Constitution as having paid all current dues to the local union. In the local Bylaws good standing is defined as payment of current quarterly dues on or before the first day of each quarter.

Taylor and the other members declared ineligible, although they paid their quarterly dues, had not paid on or before the first day of each quarter. This oversight in timely payment was the basis for the disqualification in the February notice. When the election was held on June 12, 1963, Taylor, who had declared himself a candidate for the Office of Financial Secretary, was therefore excluded from the ballot. Taylor protested to the Locals and the International on July 8, 1963. The protest was denied on September 24, 1963. On October 7, 1963, he filed a protest under Section 402 with the Secretary of Labor alleging a violation of Section 401.[2]

---

1. 29 U.S.C. § 482 (1965).

2. 29 U.S.C. § 481 (1965).

The Secretary investigated the complaint, found probable cause and filed the civil action in the Federal District Court of Colorado on December 6, 1963. The trial court, on uncontroverted facts established by the pretrial conference order, stipulations, and evidence adduced at trial, found the basis of the disqualification of Taylor unreasonable; and ordered the Secretary to supervise an election to rerun the candidates for the Office of Financial Secretary. Taylor was to be included among the candidates. This order, contrary to the demands of the Secretary, did not grant relief to other similarly aggrieved members who had failed to exhaust their internal remedies.

The order was based on two conclusions: (1) under Section 402 the scope of the Secretary's authority and thereby the jurisdiction of the court is limited to aggrieved parties who have exhausted their internal remedies; (2) the requirement that a candidate for office shall have paid his quarterly dues on or before the 1st day of the initial month of the quarter is an unreasonable requirement under Section 401.

The appeal questions the first conclusion regarding the scope of the Secretary's authority.

The cross appeal challenges the second conclusion that the eligibility requirements are unreasonable.

An examination of the legislative history of the Labor-Management Reporting and Disclosure Act discloses that it was one of the most controversial efforts before the Congress in a decade. Two years of extensive public hearings had pointed up the need for legislation that would (a) sustain the internal stability of union organizations, (b) guarantee the individual members a voice in the democratic control of the organization and (c) protect the rights of the individual members.

The sections involved in the appeal were a part of the final efforts of Congress to establish a statutory scheme to accomplish the purposes. Section 402 guarantees individual rights. It provides:

"(a) A member of a labor organization—(1) who has exhausted the remedies available under * * * such organization * * * or (2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation, may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of Section 401 of this title (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers) * * *."

"(b) The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this subchapter * * *.

"(c) If upon a preponderance of the evidence after a trial upon the merits, the court finds * * * (2) that the violation of Section 401 of this title may have affected the outcome of an election, the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization. * * *"

The debates in the Senate at the time of enactment clearly indicate that all parts of the Act must be read in conjunction with the other parts. 105 Cong. Rec. 6720 (1959) (remarks of Senator Kennedy).

Thus, the act itself clearly indicates a limitation on the part of the Secretary and the court to consider only matters in which a member has exhausted his internal remedies. This is in line with the legislative purpose to sustain the stability of the union organization by giving it the first opportunity to correct a grievance of an individual member.

In Wirtz v. Local 191, 321 F.2d 445, 448 (1963), the Second Circuit recognized the limitation, "It may be that some or all of the limitations of Section 402, such as the exhaustion of internal remedies, are relevant to the suit which that section authorizes. * * *"

Section 601 [3] gives the Secretary the general investigative power he sought to enforce in the present case. Section 601, unlike Section 402, neither requires exhaustion of internal remedies nor authorizes the Secretary to seek remedies in court.

The trial court properly limited the enforcement to the Taylor complaint.

The pertinent part of Section 401 (e) involved in the cross appeal provides: "In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to Section 504 of this title and to reasonable qualifications uniformly imposed) * * *."

The Constitution of International provides: "No member shall be eligible for election, be elected nor hold office unless he shall have been continuously in good standing in the Local Union electing him for not less than one year. * * *" The Bylaws of Locals 9, 9A, 9B, revised April, 1963, have a similar provision in Article VIII, § 3.

Article VIII, § 4 of the revised bylaws provides, "Good standing is defined as follows: That his dues be paid on or before January 1, April 1, July 1, October 1 of each year."

The amended bylaws provide in Article VIII, § 3(b), "In the event there has been no declaration of candidacy filed for an elective office, the nominees must have dues paid for the month in which nominations will be made; and nominations will be made in accordance with Section 5 of this Article."

Article VIII, § 5 provides, "Nominations of Local Union officers will be held at the Regular and District Meetings during the Month of May, with elections during the Month of June by mail referendum conducted by secret ballot among the general membership, and with installation of elected officers during the Month of July."

Article VIII, § 6, of the revised bylaws provides, "All members of Locals 9, 9A and 9B shall be eligible to nominate and vote in all elections provided their dues are currently paid for the period in which the nominations and elections are held. Nominations of Officers and elections will be held as stated in Section 5 above."

A comparison of the qualifications under Sections 4, 3 and 3(b), as conclusively shown by the evidence introduced in this case, denied a vast majority of the membership currently paid for the period in which nominations and elections are held and qualified to nominate and vote, the opportunity to be a candidate for office in the local union. The uncontroverted evidence together with an analysis of the requirements of the Constitution and Bylaws lead the trial court to conclude that those qualifications were unreasonable under Section 401(e).

The findings and conclusions of the trial court are sustained by the evidence and the law.

Affirmed.

3. 29 U.S.C. § 521 (1965).