W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

HOTEL, MOTEL AND CLUB EMPLOYEES UNION, LOCAL 6, Defendant-Appellee.

No. 513, Docket 31272.

United States Court of Appeals Second Circuit.

Argued June 13, 1967.

Decided July 28, 1967.

Robert E. Kushner, Asst. U. S. Atty (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, and Martin P. Solomon, Asst. U. S . Atty., on the brief), for appellant.

Jerome B. Lurie, New York City (Cohn & Glickstein and Leonard Leibowitz, New York City, on the brief), for appellee.

Before HAYS and FEINBERG, Circuit Judges, and DIMOCK, District Judge.*

HAYS, Circuit Judge:

Both plaintiff Secretary of Labor and defendant union appeal from a judgment of the United States District Court for the Southern District of New York in a case involving an election of officials of the defendant union. The district court held that a certain by-law of the union limiting candidacy for union office was violative of Section 401(e) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 481

* Of the Southern District of New York, sitting by designation.

(e),[1] but declined to set aside, under the provisions of Section 402(c) of the Act, the election in which the by-law was applied because the Secretary failed to show that application of the questioned by-law "may have affected the outcome" of the election. However, the district court enjoined the application of the by-law to future elections. During the course of the hearing on the Secretary's application, the district court rejected certain evidence proffered by the Secretary with respect to other violations of Section 401 which the Secretary alleged that the union had committed in the course of the election, on the ground that the Secretary's action was not supported by any complaint from a union member with respect to these alleged violations. (See § 402(a), 29 U.S.C. § 482(a)).[2]

Plaintiff attacks

(1) the refusal to set aside the election, and

(2) the rejection of evidence as to the additional violations.

Defendant attacks

(1) the holding that the union's by-law violated Section 401(e), and

(2) the issuance of an injunction against future violations.

We hold that the lower court was correct in its ruling with respect to the additional alleged violations, but reverse the decision that the by-law was violative of Section 401(e). For the reason last stated and also for the reason that the court had no power to enjoin future violations, we set aside the injunction which the district court ordered.

I.

We turn first to the district court's determination that the questioned by-law constituted a violation of the statute.

The by-law provides:

"In order to be eligible for nomination as an officer, a candidate must possess the following qualifications: (1) He must be a member of the Union in continuous good standing for a period of two years immediately preceding his

---

1. (e) In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof. Not less than fifteen days prior to the election notice thereof shall be mailed to each member at his last known home address. Each member in good standing shall be entitled to one vote. No member whose dues have been withheld by his employer for payment to such organization pursuant to his voluntary authorization provided for in a collective bargaining agreement shall be declared ineligible to vote or be a candidate for office in such organization by reason of alleged delay or default in the payment of dues. The votes cast by members of each local labor organization shall be counted, and the results published, separately. The election officials designated

in the constitution and bylaws or the secretary, if no other official is designated, shall preserve for one year the ballots and all other records pertaining to the election. The election shall be conducted in accordance with the constitution and bylaws of such organization insofar as they are not inconsistent with the provisions of this subchapter.

2. (a) A member of a labor organization— (1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or (2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation, may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide.

nomination; (2) He must be a member of either the Assembly or the Executive Board, or else, at some time in the past, have served at least one year on either the Executive Board, the Assembly, or the old Shop Delegates Council. In order to be eligible for nomination as a member of the Executive Board, as a delegate to the Assembly, or as a department delegate, a candidate must be a member of the Union in continuous good standing for a period of at least one year immediately preceding his nomination."

The aspect of the clause to which the Secretary takes exception is the requirement of previous service on the Executive Board, in the Assembly, or on the Shop Delegates Council.[3]

Section 401(e) provides that "every member in good standing shall be eligible to be a candidate and to hold office (subject to * * * reasonable qualifications uniformly imposed) * * *." 29 U.S.C. § 481(e). The issue which we must resolve is whether the eligibility restrictions of the union by-law are "reasonable qualifications."

■ In determining this question we do not regard the "clearly erroneous" rule as controlling, see Donaldson Publishing Co. v. Bregman, Vocco & Conn, Inc., 375 F.2d 639, 641 (2d Cir. 1967); Baranow v. Gibralter Factors Corp., 366 F.2d 584, 587–589 (2d Cir. 1966); Mamiye Bros. v. Barber S.S. Lines, Inc., 360 F.2d 774, 776–778 (2d Cir.), cert. denied, 385 U.S. 835, 87 S.Ct. 80, 17 L.Ed.2d 70 (1966), although even if it were, we are left with "the definite and firm conviction that a mistake has been committed." See United States v. United States Gypsum Co., 333 U.S. 364, 394–395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

■ In deciding the issue of reasonableness we must keep in mind the fact that the Act did not purport to take away from labor unions the governance of their own internal affairs and hand

that governance over either to the courts or to the Secretary of Labor. The Act strictly limits official interference in the internal affairs of unions. See, Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964); Gurton v. Arons, 339 F.2d 371 (2d Cir. 1964). The Act prescribes only certain basic minima and leaves the area not covered by these minimum prescriptions to the decisions of the unions themselves.

"Congress intentionally created a narrow remedy under Title IV of the LMRDA so that interference with union elections and management would be kept at a minimum." Wirtz v. Locals 410, 410A, 410B & 410C, Int'l Union of Operating Engineers, 366 F.2d 438, 442 (2d Cir. 1966).

The Supreme Court, in discussing Title IV, referred to "the general congressional policy to allow unions great latitude in resolving their own internal controversies." Calhoon v. Harvey, supra, 379 U.S. at 140, 85 S.Ct. at 296.

The legislative policy of leaving to the unions the maximum degree of self-government is emphasized at many points in the legislative history.

In Senate Report No. 1684, 85th Cong., 2d Sess. 12–15 (1958), for example, the following appears:

"The committee gave careful study to various proposals providing for the conduct of union elections by the National Labor Relations Board upon the request of a small percentage of the members. The committee rejected this approach for two reasons.

One fundamental objection is that these proposals turn over to an arm of the State the responsibility for carrying on the internal governmental processes of voluntary associations without any showing that the union officers and members are incompetent or corrupt. Such a measure does not promote freedom or democracy. It reduces self-government. It denies the

---

3. Since service on the Executive Board is confined to officers and members of the Assembly, the provision of the by- law for previous service on the Executive Board may be disregarded.

private responsibility and self-determination which lie at the heart of a voluntary association." Reprinted in United States Department of Labor, Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, p. 702 (1964). [Cited hereafter as "Legislative History."]

In Senate Report No. 187, the Committee referred to the following "principles" as governing the proposed legislation:

"1. The committee recognized the desirability of minimum interference by Government in the internal affairs of any private organization. Trade unions have made a commendable effort to correct internal abuses; hence the committee believes that only essential standards should be imposed by legislation. Moreover, in establishing and enforcing statutory standards great care should be taken not to undermine union self-government or weaken unions in their role as collective-bargaining agents.

2. Given the maintenance of minimum democratic safeguards and detailed essential information about the union, the individual members are fully competent to regulate union affairs. The committee strongly opposes any attempt to prescribe detailed procedures and standards for the conduct of union business. Such paternalistic regulation would weaken rather than strengthen the labor movement; it would cross over into the area of trade union licensing and destroy union independence." S.Rep. No. 187, 86th Cong., 1st Sess. 7 (1959), reprinted in U.S.Code Congressional and Administrative News, p. 2323 (1959).

■ Turning to the application of these policies to the present case, we hold that it is not self-evident that basic minimum principles of union democracy require that every union entrust the administration of its affairs to untrained and inexperienced rank and file members. Local 6 has over 26,000 members. Its assets amount to more than $2,300,-000. Its Welfare, Pension and Medical Funds have assets of over $30,000,000. The local has jurisdiction of hotel, motel and club employees throughout New York City and thus deals with hundreds of employers on behalf of employees having a number of differing skills as well as on behalf of semi-skilled and unskilled employees. It does not seem to us to be surprising that the union should hesitate to permit a cook or a waiter or a dishwasher without any training or experience in the management of union affairs to take on responsibility for the complex and difficult problems of administration of this union.

Membership in the union's Assembly, which under the union's by-law is the principal basis for eligibility for positions of greater responsibility, provides an opportunity for meeting with the officers and with other more experienced members for discussion and consideration of contract negotiations, enforcement of contract clauses, union finances and many other aspects of union administration. Members of the Assembly are also members of district councils and they participate there in the work of the various committees which deal with all aspects of union problems.

We do not believe that it is unreasonable for a union to condition candidacy for offices of greater responsibility upon a year of the kind of experience and training that a union member will acquire in a position such as that of membership in Local 6's Assembly.

The by-laws provide a procedure for their amendment. If the rank and file members of the union had felt at any time during the many years in which the eligibility restriction has been in effect that they were being unjustly barred from office they could have sought to amend the restrictive provision. The record shows no attempt to bring about such an amendment.

The Secretary of Labor makes much of the fact that only about 1700 members of the union are eligible for election to the 31 elective offices. However, when this number is combined with the

fact that all members in good standing for one year have the opportunity to become eligible for office by getting themselves elected to seats in the four hundred-odd member Assembly, the numbers, per se, do not seem to us to establish unreasonableness.

■ It is not the function of the Secretary to determine what prescribed qualifications for office will best serve the purposes of union democracy nor to dictate what policy unions should follow in limiting candidacy for union office. The union's own rules as to eligibility must prevail unless they impose unreasonable qualifications. We are persuaded that in the present case the Secretary has trespassed upon an area of union governance which is left by the statute to the union's decision. We do not believe that a proper reading of the statute in the light of its history can justify the Secretary's finding that the union has violated Section 401 by adopting the contested eligibility requirements.

Since we have determined that the by-law is a reasonable qualification, it is not necessary to decide whether this restriction on candidates "may have affected the outcome" of the election. § 402 (c), 29 U.S.C. § 482(c). Accordingly, we do not deal with that issue.

## II.

The Secretary's complaint sought to set aside the election on three other grounds in addition to the restrictive by-law: that the union failed to give adequate notice of the composition of the election districts; that there was improper interference with the members' right to vote for and support candidates of their choice; and that certain offices were not filled by election.

On defendants' motion these additional grounds were stricken from the complaint by Judge McLean. Judge Wyatt at the trial refused the Secretary's offer of proof with respect to these additional allegations.

We uphold the rejection of the additional allegations on the ground relied on by Judge McLean in the district court,

namely, that no member of the union filed with the Secretary any complaint as to these items. Section 402(a) and (b), 29 U.S.C. § 482(a) and (b), provide that:

"(a) A member of a labor organization—

(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body,

\*   \*   \*   \*   \*   \*

may file a complaint with the Secretary \* \* \* alleging the violation of any provision of section 481 of this title \* \* \*.

(b) The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall \* \* \* bring a civil action \* \* \* to set aside the invalid election \* \* \*."

■ It thus appears from the language of the statute itself that the Secretary may proceed to vindicate only those violations with respect to which he has received complaints. The legislative history reveals that Congress intended that the Secretary should have the power to bring an action only after a complaining member has exhausted his union remedies. See, for example, remarks of Senator Kennedy, June 12, 1958, Legislative History, supra, at 1093; S.Rep. No. 1684, 85th Cong., 2d Sess. (1958), reprinted in Legislative History, supra, at 701.

■ The Secretary argues strongly for a general power to protect the public interest, but nothing in the statute or in its legislative background suggests the existence of any such general power. The Secretary's function is, in Senator Kennedy's words, to act as "the [complaining] union member's lawyer." See Legislative History, supra, at 1093.

■■ A suit to declare a union election void "may only be brought after a union member has made a proper complaint to the Secretary," Wirtz v. Local

Unions 410, etc., supra, 366 F.2d at 442; accord, Wirtz v. Locals 9, 9-A & 9-B, Int'l Union of Operating Engineers, 366 F.2d 911 (10th Cir. 1966), vacated as moot, 35 U.S.L.Week 3403 (U.S. May 15, 1967), 387 U.S. 96, 87 S.Ct. 1505, 18 L.Ed.2d 586 (1967); see Wirtz v. Local 191, Int'l Bhd. of Teamsters 321 F.2d 445, 448 (2d Cir. 1963).

### III.

The trial judge, though he refused to void the election, enjoined the union from applying its restrictive by-law in future elections. The injunction must be set aside, not only because we hold the by-law not violative of Section 401(e), but also because, as the Secretary concedes, the court has no power under the Act to issue such an injunction.

DIMOCK, District Judge (concurring).

I concur in the majority's holding in so far as it disapproves an injunction and in its omission to disturb the district court's denial of the Secretary's application to set aside the election.

My concurrence in the elimination of the provision for the injunction is based upon the Secretary's concession of lack of power in the district court.

Though I concur also in the majority's omission to disturb the judgment in so far as it fails to set aside the election, I reach the result on different grounds.

The district court held that the qualifications upon candidacy were not reasonable within the terms of section 401(e) but that it could not make the necessary statutory finding that the violation of section 401 may have affected the outcome of the election. The district court, therefore, failed to set aside the election. My brethren hold that the district court erred in finding the qualification unreasonable and thus agree to affirm the judgment denying the setting aside of the election without reaching the question whether the qualifications upon candidacy may have affected its outcome.

I agree with the district court that the qualifications were unreasonable and thus will reach the question whether the

district court was right in refusing to find that the violation of section 401 may have affected the outcome of the election, the statutory basis for setting the election side.

Irrespective of the provisions of Rule 52(a) F.R.Civ.P. that findings of fact shall not be set aside unless clearly erroneous, I agree with the district court's findings (a) that the only way to attain office in the union was through membership in the Assembly, that the only candidates that won such election were those who ran on Row A, the administration ticket, and that the only way they could run on Row A was to be selected by the administration, and (b) that "dissidents could not have become eligible to be opposing candidates for office and effective opposition was thus sharply curtailed." When it comes to the question of the findings' inviolability as not "clearly erroneous," I can see no escape from the effect of the rule. We are not here faced with findings of fact to be drawn from a set of cold documents. This is a case where the question before the district court was the practical effect of the rules of a union. It seems to me be made for the "not clearly erroneous rule." The effect of the restrictions does not depend entirely on their letter. When Judge Wyatt found that dissidents could not have become opposing candidates for office he was expressing the distillation of oral testimony about what happened in a particular hotel or a particular caucus of waiters or kitchen helpers or chamber maids. It discourages thorough work by a judge of first instance for an appellate court lightly to reject a finding based on the feeling for a case that the trial judge can get by patient listening to evidence of what is behind the written documents.

I pass to the issue not reached by the majority: the correctness of Judge Wyatt's opinion and judgment in so far as it holds that it cannot be found that the violation of Section 401 with respect to qualifications of candidates affected the outcome of the election. I accept Judge Wyatt's excellent opinion and con-

tent myself with simply saying so since the subject does not seem to me to have sufficient precedential value to warrant repetition of what he has said. Though the majority hold the election good because the qualification was reasonable and I maintain that it was good because the qualification, though unreasonable, did not affect it, we reach the same result and I concur in that result.

While I thus agree with the majority that the district court was right in omitting to grant the Secretary's prayer to set aside the election and that the district court was wrong in awarding an injunction, I disagree with the majority as to the form of our mandate.

The statement preceding the majority opinion recites that the appeals are from a judgment (a) which was entered upon a decision * * * (2) holding that, though a certain by-law of the defendant union limiting candidacy for union office violated section 401(e) of the Act, 29 U.S.C. § 481(e), an election in which the by-law was applied could not be declared void under the provisions of § 402(c) because plaintiff failed to show that the violation of section 401(e) "may have affected the outcome" of the election and (b) which enjoined (3) the application of the questioned by-law to future election. The statement ends with the expression "Affirmed as to (1); reversed as to (2) and (3)."

The statement thus properly draws a distinction between the decision and the judgment. As said by Judge Leibell in Winkelman v. General Motors Corporation, D.C.S.D.N.Y., 48 F.Supp. 490 (1942), at 494, "The Federal Rules of Civil Procedure make a clear distinction between the decision (the Findings of Fact and Conclusions of Law) and the judgment." As appears from Rule 52(a) F.R.Civ.P., "[T]he court shall find the facts specially and state separately its conclusions of law thereon and direct the

entry of the appropriate judgment * * *." The statement preceding the opinion in the instant case, purports, however, to affirm and reverse parts of the "decision" of the court below. Though the word appears again, this time in the opinion itself, appeal does not lie from a finding or conclusion as such. Breeding Motor Freight Lines v. Reconstruction Finance Corporation, 172 F.2d 416, 425, 10 Cir. (1949).* That the word "decision" is not used here as a conversational equivalent of "judgment" appears from the fact that its use affects the result. If the appeal had been from the judgment, the judgment would have been reversed in only one respect instead of being reversed in the two respects in which the statement purports to reverse the decision. This arises from the fact that the majority of this court agree with the judgment of the court below that the Secretary's prayer for a setting aside of the election should be denied but disagree with the court below as to the decision giving the reason for denying the prayer. The district court said that the prayer should be denied because, though the candidacy restriction violated the law, it could not be said that it might have affected the election, while the majority says that the prayer should be denied because the candidacy restriction did not violate the law and, therefore, does not reach the question of effect on the election. The statement preceding the opinion, which would have the effect of affirming the lower court's judgment refusing to grant the prayer, purports, however, to reverse the lower court's decision as to its reason.

The result of the majority holdings and of my foregoing concurring opinion should be expressed in the same direction:

The judgment is modified so as to provide simply for dismissal of the complaint and, as so modified, affirmed.

---

* The word "decision," as used in Sections 1291 and 1292 of Title 28 of the United States Code defining jurisdiction of the Court of Appeals, refers to the judgment or other final sentence of the court below. Ex parte Tiffany, 252 U.S. 32, 40 S.Ct. 239, 64 L.Ed. 443 (1919); In re Forstner Chain Corporation, 177 F. 2d 572, 1 Cir. (1949).