W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,

v.

NATIONAL MARITIME UNION OF AMERICA, Defendant-Appellant.

No. 545, Docket 32376.

United States Court of Appeals
Second Circuit.

Argued June 18, 1968.

Decided July 29, 1968.

---

2. 6A Collier on Bankruptcy 183 (14th ed. 1965).

Michael D. Hess, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty. for the Southern Dist. of New York, and Patricia M. Hynes, Asst. U. S. Atty., New York City, on the brief), for plaintiff-appellee.

Abraham E. Freedman, New York City, for defendant-appellant.

Before MOORE and HAYS, Circuit Judges, and TIMBERS, District Judge.*

TIMBERS, District Judge.

The National Maritime Union of America appeals from a judgment entered April 24, 1968 in the United States District Court for the Southern District of New York by Constance Baker Motley, District Judge, after a non-jury trial, setting aside the union's 1966 election of officers and directing a new election pursuant to Section 402(c) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 482(c).[1] 284 F.Supp. 47 (S.D.N.Y.1968). The union also appeals from an interlocutory order by Judge Motley striking its demand for jury trial. 272 F.Supp. 68 (S.D.N.Y.1967).

The district court held that the union's requirement that would-be candidates for union office personally obtain the official nomination forms and neces-

---

* Chief Judge of the District of Connecticut, sitting by designation.

1. Section 402(c) of the Act provides in relevant part:

"If, upon a preponderance of the evidence after a trial upon the merits, the court finds—

(1) that an election has not been held within the time prescribed by section 401 of this title, or

(2) that the violation of section 401 of this title may have affected the outcome of an election,

the court shall declare the election, if any, to be void and direct the conduct of a new election, under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization. The Secretary shall promptly certify to the court the names of the persons elected, and the court shall thereupon enter a decree declaring such persons to be the officers of the labor organization. . . . "

sary endorsements and the union's requirement that a candidate for national office must previously have served as an officer violated Section 401(e) of the Act, 29 U.S.C. § 481(e).[2] The court having found a reasonable probability that the outcome of the union's 1966 election may have been affected by these violations, it held that the election must be set aside and a new election conducted pursuant to Section 402(c)(2) of the Act. The court also determined that the union's failure in 1966 to elect the field patrolman in Panama, the branch agent in Yokohama, the officials in charge of the ports in Greenville, Memphis, Joliet, and Paducah, and all patrolmen violated Section 401(a) of the Act, 29 U.S.C. § 481(a),[3] and required a new election pursuant to Section 402(c)(1) of the Act. In addition, the court found that the union's failure to provide absentee ballots violated Section 401(e) but declined to order a new election on this ground because the violation did not affect the outcome of the 1966 election.

The union claims the court erred in striking its demand for jury trial and challenges the court's holdings with respect to the self-nominating procedure, the prior office requirement, and the failure to elect various officers. We agree with the district court that there is no right to jury trial. We further agree that the self-nominating procedure, the prior office requirement and

the failure to elect various officers violated Section 401 of the Act and that a new election must be held under Section 402(c). We therefore affirm.

### JURY TRIAL DEMAND

The union contends that in an action brought by the Secretary of Labor pursuant to Section 402 of the Act there is a right to jury trial, and the district court erred in striking its jury demand. No claim is made that the Act itself confers the right. Indeed, the language of Section 402(c) indicates just the opposite. It is "the court" which must find upon a preponderance of the evidence after trial upon the merits that Section 401 has been violated; and it is "the court" which must declare the election void and direct the conduct of a new election. Cf. Wirtz v. Jones, 340 F.2d 901, 904 (5 Cir. 1965). Rather, the union contends that this statutory cause of action to invalidate an election and to obtain a new one is analogous to the common law *quo warranto* proceeding; therefore, it contends, the Seventh Amendment to the United States Constitution guarantees the right to jury trial.

Assuming that a jury trial were available in a *quo warranto* proceeding at common law,[4] the instant action is not the equivalent of *quo warranto* but is entirely equitable in nature. Wirtz v. District Council No. 21, Bhd. of Painters, Decorators and

2. Section 401(e) of the Act provides in relevant part:

   "In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof. . . . The election shall be conducted in accordance with the constitution and bylaws of such organization insofar

as they are not inconsistent with the provisions of this subchapter."

3. Section 401(a) of the Act provides:
   "Every national or international labor organization, except a federation of national or international labor organizations, shall elect its officers not less often than once every five years either by secret ballot among the members in good standing or at a convention of delegates chosen by secret ballot."

4. It is at best controversial whether there was a right to jury trial in *quo warranto* proceedings at common law. Compare Atkinson v. McDonald, 108 Wis. 8, 84 N.W. 171 (1900) (right) with State ex rel. Mullen v. Doherty, 16 Wash. 382, 47 P. 958 (1897) (no right). See 44 Am.Jur., Quo Warranto, § 111 (1942).

Paperhangers of America, 211 F.Supp. 253 (E.D.Pa.1962). *Quo warranto* was a remedy against usurpation of a public office or privilege granted by the state. See, e. g., State ex rel. Morris v. Bulkeley, 61 Conn. 287, 23 A. 186 (1892); 44 Am.Jur., Quo Warranto, § 6 (1942). Courts have permitted its use to challenge the right to office in corporations on the ground that corporations exist by virtue of franchises from the state and usurpation of a corporate office is therefore usurpation of a privilege granted by the state. See State ex rel. Wilcox v. Curtis, 35 Conn. 374 (1868); 44 Am. Jur., Quo Warranto, § 35 (1942). But while unions are regulated by the state and receive certain protections, they are unincorporated associations and do not depend upon a franchise from the state for their existence. Thus, at common law *quo warranto* would have been inappropriate to challenge a union election.

Furthermore, a proceeding pursuant to Section 402 is not merely to determine whether the alleged winners of the union election have a right to hold office. It is an integral part of the remedy provided by Congress that the court "direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and by-laws of the labor organization." Section 402(c).

Cases cited by the union such as Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962), and Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959), standing as they do for the proposition that the right to jury trial on legal claims is not lost by the combination of such claims with equitable claims, are inapposite here where no part of the relief sought can be construed as legal rather than equitable.

We therefore hold that the district court properly struck the union's demand for trial by jury.

### SELF-NOMINATING PROCEDURE

The National Maritime Union of America, consisting of about 47,500 members, is organized on a national basis. It has no locals although it has subdivisions known as branches and port offices. These branches and port offices are headed by a branch agent or field patrolman elected by the entire national membership. In the 1966 election, thirteen branch agents and thirteen field patrolmen were elected. In addition to these officers, eight so-called national officers were elected: a national president, a secretary-treasurer, three vice-presidents, and three national representatives. Thus, there were thirty-four positions on the ballot. Joseph Curran ran unopposed for president as did the candidates for national representative. There was a contest for the office of secretary-treasurer. There were four candidates for the three vice-presidencies. Eight of the candidates for branch agent were unopposed. Eighteen men sought the thirteen field patrolmen positions.

Upon the complaint of several union members who had exhausted their remedies within the union, the Secretary of Labor challenged numerous aspects of the nominating procedure in the 1966 election. The district court, however, upheld the Secretary only with respect to what it found to be a requirement enforced against anti-administration candidates that they personally obtain the official nominating forms and necessary endorsements of fellow members. The court held that the requirement violated Section 401(e) in three ways. First, the requirement in itself deprived union members of a reasonable opportunity to nominate and support candidates, particularly in view of the fact that many members served on ships at sea with less than the one hundred members needed to endorse a candidate for a national office. Second, the requirement was not uniformly imposed since only anti-administration candidates were obliged personally to secure the forms and endorsements. Third, the requirement, and therefore the conduct of the election, failed to comply with the union's own constitution which guaranteed mem-

bers "the right . . . to nominate candidates for office . . . ." 1965 Constitution, Art. 3, Section 1. The court concluded that there was a reasonable probability that the requirement affected the outcome of the election and hence a new election was necessary.

The union attacks the sufficiency of the evidence supporting the court's conclusion. We find ample evidence. For example, Joseph Curran, the president of the union, testified that it was necessary for a candidate personally to secure the required endorsements on the official forms. Union member and would-be anti-administration candidate for president, Richard Haake, confirmed that he was told the same thing. Nevertheless, union members, Joseph Padilla and James Morrissey, testified that incumbent officers did not personally obtain their own endorsements. Several union members, Gaston Firmin-Guyon, Joseph Martinez, and James Morrissey, were told by union officials that they could not pick up nomination forms for others. Firmin-Guyon and Martinez made specific attempts to do so and were rebuffed. Even if we were to accept the union's claim that Martinez's retired status disqualified him from nominating another, Firmin-Guyon's unsuccessful attempt is sufficient to support the district court's finding that potential candidates were excluded by the requirement and that therefore there was a reasonable probability that the outcome of the election had been affected. Cf. Wirtz v. Local 410, Int'l Union of Operating Engineers, 366 F.2d 438, 443 (2 Cir. 1966); Wirtz v. Local 406, Int'l Union of Operating Engineers, 254 F.Supp. 962 (E.D.La.1966).

■■ We do not imply that Section 401(e) precludes a union from uniformly resorting to reasonable nominating procedures which require the participation of potential candidates at some point prior to the appearance of their names on the ballot. We hold only that every union member is entitled to advance the candidacies of others and that would-be candidates are entitled to resort to such aid.

### PRIOR OFFICE REQUIREMENT

According to the union's constitution, in 1966 a person was not eligible to hold any elective office unless he had been an active member of the union "in good standing continuously for five years immediately preceding nomination," and could "show proof of Group 1 shipping status or equivalent sailing time on NMU contract vessels for each of the five (5) years preceding nomination . . . ." 1965 Constitution, Art. 9, Sections 1 and 2. To be eligible for any of the eight national offices, a member, in addition to meeting the membership and shipping status qualifications, must have served at least one full four year term as a national officer, branch agent, field patrolman or patrolman. Since it requires some time to achieve Group 1 shipping status, a minimum of ten years must elapse before a person under these circumstances may become eligible to hold a national office. By reason of this time element and the relatively few offices in the union, only about 335, or less than 1%, of the union's members were eligible to hold a national office at the time of trial. At least two members who attempted to run for a national office, Richard Haake and Garrett Eylders, were disqualified because they failed to meet the prior office requirement.

The Secretary challenged the five year membership requirement, the five year Group 1 shipping status requirement, and the prior office holding requirement as unreasonable qualifications upon the right to hold office and therefore violations of Section 401(e). The district court found that under the circumstances of the case the first two requirements were reasonable. The court concluded however that no overriding union policy consideration justified the drastic curtailment of available candidates for national office caused by the prior office holding requirement and therefore found the requirement unreasonable and

grounds for a new election. On this appeal by the union, our attention is thus directed solely to the correctness of the district court's holding with respect to this one eligibility requirement.

If there were any doubt in the past as to the unreasonableness of a qualification primarily responsible for rendering over 99% of a union's membership ineligible to hold office, that doubt surely has been put to rest by the Supreme Court's opinion in Wirtz v. Hotel, Motel and Club Employees Union, Local 6, 391 U.S. 492 (1968), rev'g, 381 F.2d 500 (2 Cir. 1967), decided after the district court's decision in this case. In Local 6, the Secretary attacked an eligibility requirement of one year of service on either the local's executive board, assembly or former shop delegate council which rendered 93% of the local's members ineligible for major elective offices. The Supreme Court, in holding the restriction unreasonable, emphasized what it had said earlier in Wirtz v. Local 153, Glass Bottle Blowers Assn., 389 U.S. 463, 471 (1968), that " '. . . the freedom allowed unions to run their own elections was reserved for those elections which conform to the democratic principles written into § 401.' " 391 U.S. at 496–97. Furthermore, the Court repeated its conclusion expressed in Wirtz v. Local 125, Laborers' Int'l Union, 389 U.S. 477, 483 (1968), that the provisions of Section 401 are " '. . . necessary protections of the public interest as well as of the rights and interests of union members.' " Id. at 497. In view of the public interest involved, the Court evidently considered it irrelevant that no union members had attempted to change the restrictive by-law. Compare Wirtz v. Hotel, Motel and Club Employees Union, Local 6, 381 F.2d 500, 505 (2 Cir. 1967). Similarly without effect in the instant case is the membership's approval in 1960 of the far more restrictive requirement disapproved of here.

Contrary to the union's contention, we discern no intent on the part of Congress to differentiate between local and national eligibility requirements. "[T]he abuses of entrenched leadership that the LMRDA was expressly enacted to curb" (Id. at 499.) are serious and detrimental to the public interest whether they occur at the national or local level. While it is true that Section 401(b) requires elections in local organizations to be held with greater frequency than in national organizations, and Section 401(a) allows the election of national officers by convention, neither provision reflects any less concern for the democratic election of national officers. The election of national officers by delegates elected by the membership-at-large does not restrict or represent approval of restrictions upon the eligibility of potential candidates.

■ The union also strenuously objects to the district court's finding that prior service as a local officer does not benefit a national officer in the exercise of his functions in the higher office. While we would hesitate to say that experience gained in one of the lower offices bears no relation to a candidate's ability to perform as a national officer, the Supreme Court quite clearly has pointed out that it is for the rank-and-file union members to distinguish qualified from unqualified candidates. Id. at 504. It must be left to the judgment of each member to determine in particular instances how much weight to give to prior experience.

■ We therefore agree with the district court that the union's prior office holding requirement is an unreasonable restriction upon the right to hold office, and that this violation of Section 401(e) may have affected the outcome of the 1966 election.

FAILURE TO ELECT VARIOUS OFFICERS

Section 401(a) requires election of the officers of a national labor organization not less than once every five years and failure to comply with this section necessitates a new election pursuant to Section 402(c)(1). The term "officer" as used in Section 401(a) is defined in

Section 3(n) of the Act, 29 U.S.C. § 402(n), as "any constitutional officer, any person authorized to perform the functions of president, vice president, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing body."

The district court found that the union's 1966 election failed to comply with Section 401(a) because certain officerships were not placed in contention. Specifically, the court concluded that the port agent in Yokohama, the field patrolman in Panama, the representatives in charge of ports in Greenville, Memphis, Joliet and Paducah, and all patrolmen should have been elected but were not.

■ With respect to the port agent in Yokohama, and the field patrolman in Panama, the union concedes that port agents and field patrolmen are constitutional officers who must be elected pursuant to Section 401(a). In fact, the union's constitution requires the election of such officers every four years. 1965 Constitution, Art. 11, Section 3. The union contends however that Yokohama and Panama were organizing centers rather than regular ports and did not yet require the services of an elected official. Not only do we find nothing in the record to support this contention, but we accept at face value the union's characterization of those in charge of these ports as branch agent and field patrolman. The district court therefore properly held that these positions should have been filled by election in 1966.

■ The situation with respect to the union's representatives at the ports of Greenville, Memphis, Joliet and Paducah is slightly different. Three men actually held the four positions, one person serving at both Greenville and Memphis. These men were patrolmen. Patrolmen, not to be confused with field patrolmen, are characterized as officers by the union constitution and their duties are defined therein. 1965 Constitution, Art. 11, Sections 2 and 3, Art. 13, Section 6.

Prior to 1963 the union's constitution required the election of patrolmen along with other officers, but in that year the constitution was amended to provide for their appointment by the national president subject to the approval of the national officers. The district court held that all patrolmen were constitutional officers and were required to be elected pursuant to Section 401(a). The court however did not rest its decision as to those patrolmen at Greenville, Memphis, Joliet and Paducah on the fact that they were patrolmen but rather on the fact that they were in charge of ports. We think this was proper and that the record supports the court's conclusion. Patrolmen are not normally in charge of ports; and the union's constitution distinguishes between the duties of patrolmen and the duties of "Officials in Charge of Ports." 1965 Constitution, Art. 13, Sections 5 and 6. The union does not seriously contend that officials in charge of ports are not subject to election. The union does claim however that the four ports in question are small river ports under the supervision of the elected agent in the port of St. Louis. We find however that the record adequately establishes not only that the representatives at these ports were in fact in charge of them but that the union itself recognized that the men were in charge. Furthermore, since we agree with the district court that all patrolmen must be elected, we would uphold an order requiring the election of these representatives on that additional ground.

The union argues that Section 401(a) does not require the election of patrolmen. The district court based its opposite conclusion on four grounds. First, since the union's constitution characterized patrolmen as officers and defined their duties, patrolmen were "constitutional officers." Second, patrolmen were placed in charge of ports, i. e., the ports of Greenville, Memphis, Joliet and Paducah. Third, the patrolmen in charge of these ports sat on the union's national council pursuant to the provisions of the constitution at the time of

the 1966 election. 1965 Constitution, Art. 5, Section 3. Fourth, service as a patrolman for four years fulfilled the prior office requirement for national office.

We think the district court correctly concluded that Section 401(a) requires the election of all patrolmen, although we do not agree that, because several patrolmen were placed in charge of ports and therefore sat on the national council, all patrolmen must for *that* reason be elected.

■■■ What we find persuasive is the treatment of patrolmen as officers by the union's constitution. Patrolmen are described as "Other Officers" in Article 11, Section 2 of the union's 1965 constitution. Article 11, Section 3, in providing for elections, refers to "all officers except Patrolmen." The duties of patrolmen are set out in Article 13, Section 6 under the heading "Duties of Officers." While these duties may not be as autonomous as the duties of other officers, they are not purely ministerial, as the union contends. For example, patrolmen are "responsible for the strict enforcement of the Union's no-discrimination policy"; patrolmen have the responsibility of using their "best efforts to adjust grievances to the satisfaction of any aggrieved member"; and patrolmen must "see to it that collective bargaining agreements between the Union and various employers are properly and effectively enforced." 1965 Constitution, Art. 13, Section 6(d), (e) and (f). We conclude that patrolmen are "constitutional officers" within the definition of "officer" in Section 3(n) of the Act and applicable to Section 401(a).

■■■ We find no justification for limiting the definition of "constitutional officer" to the chief executive officers of a union. If that had been the intent of Congress, it would have omitted the term "constitutional officer" from Section 3(n) and relied on the remainder of that section which simply defines "offi-

cer" as ". . . any person authorized to perform the functions of president, vice president, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing body." Rather, the legislative history of the Act demonstrates that Congress was concerned that its intention broadly to define "officer" would be thwarted if a union rewrote positions out of its constitution.[5] Hence, Congress resorted to a further definition of "officer" in an attempt to prevent this; and we do not think that by doing so Congress intended that this further definition should in any way limit its initial definition. See Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, U. S. Government Printing Office, Vol. 2, pp. 1087–1088, 1288 (1959). Both the Senate and House reports on the purposes of the Act state that "constitutional officers and members of executive boards" should be elected. S. Rep. No. 187, 86th Cong., 1st Sess. 3 (1959), U. S. Code Cong. & Ad. News, 86th Cong. 1st Sess., Vol. 2, p. 2320 (1959); H.R.Rep. No. 741, 86th Cong., 1st Sess. 3 (1959), U. S. Code Cong. & Ad. News, 86th Cong., 1st Sess., Vol. 2, p. 2426 (1959).

We need not dilate upon the public interest in free and democratic union elections. That interest certainly would not be furthered by permitting the president of the union to appoint, rather than allowing the membership to elect, those who hold the approximately seventy-three positions of patrolmen constituting over two-thirds of the offices in the union. Furthermore, patrolmen are the officers in closest contact with the majority of the union's members and should be the most responsive to their needs. This responsiveness can be insured only by requiring their election.

Little need be said of the fact that, in the past, service as a patrolman satisfied the union's prior office requirement for election to a national office. That, to-

---

5. See NLRB v. Coca-Cola Bottling Co., 350 U.S. 264 (1956).

gether with the appointment of patrolmen by the president, insured the availability of potential pro-administration candidates. We agree with the district court that this benefit conferred upon a patrolman is indicative of the importance of the position.

We therefore conclude, as did the district court, that the union's failure in 1966 to elect the port agent in Yokohama, the field patrolman in Panama, the representatives in charge of ports in Greenville, Memphis, Joliet and Paducah, and all patrolmen violated Section 401(a) and requires a new election pursuant to Section 402(c) (1) of the Act.

The judgment of the district court is affirmed in all respects.

HAYS, Circuit Judge (dissenting):

I dissent with respect to the requirement of electing patrolmen.

I fear that, in trying to keep the courts from taking over lock, stock and barrel the internal operation of labor unions, I am fighting a fairly hopeless rearguard action. But, I am not yet compelled by any Supreme Court decision on the issue to accept the position that a union cannot provide for the appointment rather than the election of what are here called patrolmen, and are usually called business representatives.