James M. MORRISSEY et al., Plaintiffs,

v.

Joseph CURRAN et al., Defendants.

No. 69 Civ. 442.

United States District Court,
S. D. New York.

Jan. 11, 1972.

Duer & Taylor, New York City, for plaintiffs; Arthur E. McInerney, New York City, of counsel.

Bloom & Epstein, New York City, for defendants Curran, Wall and Freedman; Harold Epstein and Robert M. Milner, New York City, of counsel.

Greenhill & Speyer, New York City, for defendant Perry; John M. Speyer and Michael L. Ingram, New York City, of counsel.

Simpson, Thacher & Bartlett, New York City, for defendant Segal; Roy L. Reardon and Melvyn L. Cantor, New York City, of counsel.

Surrey, Karasik, Greene & Seham, New York City, for defendant Karchmer; Herman E. Cooper and Carl F. Goodman, New York City, of counsel.

## MEMORANDUM

BONSAL, District Judge.

Plaintiffs, three members of the National Maritime Union of America ("NMU"), instituted this action in February, 1969, against defendants Curran and Wall, elected officers of the NMU, Perry, a former employee of NMU and Assistant to the President, and Segal, Freedman and Karchmer, Trustees of the NMU Officers Pension Plan ("the Pension Plan"). The complaint alleged that the Pension Plan had been amended in 1961 so as to include as participants designated employees of the NMU who were not elected officers of the NMU ("non-officers"), in violation of NMU's constitution then in effect, and that the amendment was for the purpose of siphoning NMU funds to non-officers who were not authorized to receive them. In the complaint, plaintiffs seek an accounting and money damages; an injunction enjoining the Trustees of the Pension Plan from paying any benefits to non-officers; and costs, disbursements and attorneys' fees.

Plaintiffs and defendants both moved for summary judgment and this court granted summary judgment on liability to the plaintiffs, 302 F.Supp. 32 (1969). This court found that the 1960 constitution of NMU did not authorize the inclusion of non-officers in the Pension Plan and that the plaintiffs were entitled to relief under 29 U.S.C. § 501. On appeal, the Court of Appeals affirmed the foregoing determination and, in addition, held that certain amendments to the constitution which were submitted to the membership in 1969 and which would have enabled the union to validate retroactively pensions theretofore paid to non-officers, were exculpatory and void under 29 U.S.C. § 501(a) (the Labor-Management Reporting and Disclosure Act of 1959), (423 F.2d 393 (1970)). The Supreme Court denied certiorari, Curran v. Morrissey, 399 U.S. 928, 90 S.Ct. 2245, 26 L.Ed.2d 796 (1970); Segal v. Morrissey, 400 U.S. 826, 91 S.Ct. 52, 27 L.Ed.2d 56 (1970). The proceeding was remanded to this court for appropriate action declaring the amendments to the constitution to be without effect and enjoining defendants from acting under them. In addition, this court was asked to pass on the issue of whether the defendants should be enjoined from retaining counsel paid or to be paid with NMU funds.

By memorandum filed July 6, 1970, this court held that the amendments to the NMU constitution were without effect, and enjoined defendants from acting under them, and further enjoined defendants from employing counsel paid or to be paid from union funds, and filed an appropriate order to this effect. Thereafter, there was a substitution of counsel on behalf of certain of the defendants.

The issue of damages was tried to the court on August 23, 1971, and following the trial, the parties submitted proposed findings of fact and conclusions of law. At the trial, the parties stipulated that between December 1, 1960 and May 23, 1969 NMU paid to the Pension Plan the aggregate sum of $1,628,921 for the accounts of non-elected personnel employed by NMU. These payments can be broken down as follows:

|  | Wages | Contributions |
|---|---|---|
| Patrolmen | $3,968,181.50 | $1,021,930.40 |
| Field Patrolmen | 214,381.00 | 55,692.06 |
| Agents | 124,586.50 | 31,015.16 |
| Organizers | 315,185.00 | 81,102.70 |
| William Perry | 169,907.00 | 84,782.58 |
| Staff Employees | 1,370,853.00 | 354,398.10 |
| Total: | $6,163,094.00 | $1,628,921.00 |

However, the parties did not stipulate as to what part of the $1,628,921 was paid for the accounts of non-officers.

Under the prior decision of this court, 302 F.Supp. 32, as affirmed by the Court of Appeals, 423 F.2d 393, it is clear that NMU employees holding the positions of Assistant to the President, Organizer, Maintenance Supervisor, Bookkeeping Supervisor, Records and Supplies Supervisor, Executive Secretary, Publicity Director and Editor of the Pilot were not officers, and that NMU employees holding union offices enumerated in Article 11 of the NMU constitution in accordance with the provisions of the NMU constitution were officers [1] and therefore, under Article 14, Section 7 of the 1960 NMU constitution, were authorized to participate in the Pension Plan.

■ While in 1960 Article 11 of the NMU constitution provided that all union offices would be elective, in 1963 Article 11 was amended to provide that the office of Patrolman would be filled by appointment. In addition, during the entire period involved in this litigation Article 8, Section 9 of the NMU constitution provided that vacancies in elective offices other than National President, National Secretary-Treasurer, or Vice-President could be filled by appointment for the remainder of the unexpired four-year term of office. Accordingly, Patrolmen holding office by appointment under Article 11 of the N MU constitution between 1963 and 1969, when Patrolman once again became an elective office, see Wirtz v. National Maritime Union of America, 284 F.Supp. 47 (S.D.N.Y.), aff'd 399 F.2d 544 (2d Cir. 1968), and Patrolmen, Field Patrolmen, and Agents holding office between elections by appointment, pursuant to Article 8, Section 9 of the NMU constitution, were officers in accordance with the provisions of the NMU constitution and therefore were authorized to participate in the Pension Plan.

■ Of the $1,628,921 paid into the Pension Plan for the accounts of non-elected personnel employed by NMU, $1,108,637.62 was paid to appointed officers holding union office in accordance with the provisions of the NMU constitution as follows: Patrolmen—$1,021,930.40; Field Patrolmen—$55,692.06; Agents—$31,015.16. The balance of the $1,628,921, or $520,283.38, was paid into the Pension Plan for the accounts of employees who were not union officers, as follows: Organizers—$81,102.70; the Assistant to the President of NMU (defendant Perry)—$84,782.58; and staff employees—$354,398.10. Since Article 14, Section 7 of the 1960 NMU constitution did not authorize the inclusion of non-officers in the Pension Plan, NMU is entitled to recover from the Trustees of the Pension Plan the $520,283.38 paid into the Pension Plan for the accounts of the non-officers.

The evidence also shows that the Trustees of the Pension Plan paid out of the Pension Plan to non-officers a total of $371,271. These payments can be broken down as follows:

| | |
|---|---|
| William Perry | $222,200 |
| Sarah Laderhandler | 9,201 |
| James Tevan | 12,799 |
| Sophia Tevan | 11,561 |
| Irving Branch | 115,510 |
| Total | $371,271 |

It also appears from the evidence at the trial that NMU expended a total of $24,151.52 in connection with the adoption of the 1969 amendments to the constitution, which amendments the Court of Ap-

---

1. Article 11 of the 1960 NMU constitution entitled "Officers and Term of Office" reads as follows:
   "Section 1—National Officers: National Officers of the NMU shall consist of:
   (1) National President
   (2) National Secretary-Treasurer
   (3) Three (3) Vice-Presidents
   (4) Three (3) National Representatives
   Sec. 2—Other Officers: The other officers shall consist of:

   (1) A branch Agent for each Branch.
   (2) Field Patrolmen as numerically and geographically determined by the National Council.
   (3) Patrolmen as numerically and geographically determined by the National Council.
   Sec. 3—Term of Office: All officers shall be elected for a term of four (4) years, to commence as soon as practicable after certification of the election results."

peals found to be exculpatory, void, and of no effect.

 Since defendant Perry was a non-officer but, as Assistant to the President of NMU, was in a fiduciary capacity, he will be required to return to the Pension Plan all amounts which he has received from it, together with interest.[2]

Plaintiffs contend: (1) that the defendants Curran, Wall and Freedman should be required to pay to NMU the $24,151.52 expended in connection with the adoption of the 1969 amendments to the NMU constitution, which amendments the Court of Appeals found to be exculpatory; (2) that the defendants Curran, Wall, Perry and Freedman should be directed to pay to NMU the value of the legal services rendered by Freedman and Sovel in this action; and (3) that the defendants should be "surcharged" with respect to pension payments made by NMU to non-officers, after the order of this court filed May 23, 1969, which plaintiffs assert were for the purpose of circumventing that order. Defendants contend that these claims are not within the scope of this action.

Since the court limited the issues to be determined at the August 23, 1971 trial to (1) the amount wrongfully paid into the Pension Plan; (2) the amount wrongfully paid out of the Pension Plan; and (3) the liability of defendant Perry, plaintiffs' additional claims are not properly before the court at this time. However, plaintiffs may notice a hearing for the purpose of determining these additional claims.

Plaintiff may also notice a hearing to determine the personal liability, if any, of the defendant trustees, Freedman, Segal and Karchmer, and officers, Curran and Wall, to NMU for the monies which the Pension Plan has paid out to non-officers and which it is unable to recoup.

Judgment will be entered directing the Pension Plan to pay NMU the $520,283.38 which it received from NMU for the account of non-officers, together with interest to date. Judgment will be entered in favor of the Pension Plan against the defendant Perry in the amount of $222,200 improperly paid to him, together with interest to date.

The foregoing constitutes the court's findings of fact and conclusions of law, F.R.Civ.P. 52(a).

Settle judgments on notice.

---

**2.** Defendant Perry's contention that the court is without subject matter jurisdiction over the claim against him is without merit in view of the Court of Appeals' holding that, "[t]he trial court was correct in finding that all of the defendants were in a position of trust and responsibility in relation to the monies charged to have been unlawfully expended and all had a duty to see that it was restored to the Union treasury." 423 F.2d at 400.